HOOD, Judge.
Plaintiff, Mrs. Linnye Ruth Wimberly Lester, was judicially separated from her husband, Donald Elbert Lester, Jr., by judgment of the district court dated December 31, 1968. In that judgment the court decreed that the community of acquets and gains theretofore existing between the parties was dissolved, and that defendant was enjoined from encumbering or disposing of any of the community property pending a division and partition thereof.
On February 11, 1969, Mrs. Lester instituted this suit against Mr. Lester demanding a partition of the community property. After a number of pleadings had *480 been filed and a hearing held, judgment was rendered by the trial court: (1) Recognizing Mrs. Lester as the owner of one-half the assets of the community, and decreeing that “she is entitled to be placed into immediate possession of the assets; (2) rejecting defendant’s demand that he be permitted to present the names of the community creditors, and that these creditors be paid from the proceeds of the sale of the community property; (3) appointing a notary to effect a partition in kind of “the properties in the present inventory and not here traversed;” and (4) ordering that the question of the indebtedness due by defendant Lester to the community be “referred for hearing before the said Notary Public.” Defendant Lester appealed from that judgment.
The issues are: (1) Does the record support the finding of the trial court that the community property is divisible in kind? (2) Did the trial court err in ordering the partition in kind of only a part of the assets of the community? (3) Is Mrs. Lester entitled to be placed in possession of her one-half interest in the community assets prior to the final liquidation of the community and the payment of community debts ?
Plaintiff alleged in her original petition for a partition that the assets of the community were not divisible in kind, and that a part of those assets consisted of debts due the community by the separate estate of defendant Lester. Upon the filing of that petition, the trial court issued an order appointing a notary public to make an inventory of the effects belonging to the community, “including any indebtedness that may be due to the community by the separate estate of the defendant.” Defendant Lester filed an answer and other pleadings, alleging among other things that the community assets are divisible in kind, that defendant’s separate estate is not indebted to the community for any amount whatsoever, and that he is entitled to have the debts due by the community paid and satisfied from community assets before a distribution of those assets is made.
No inventory was made by the notary appointed by the Court. Some time after the appointment was made, however, defendant Lester furnished the notary with a document which purported to be a list of the assets and liabilities of the community which had existed between the parties. The document also included a list of the assets and liabilities of some corporations in which the community obviously had an interest and a list of the assets of the separate estate of defendant Lester.
On May 20, 1969, pursuant to the pleadings which had been filed an order was signed by the trial judge directing the notary to file the inventory which had been submitted to him by defendant, and the notary was directed to thereafter request his discharge. The order provided that either party was allowed a limited period of time after the filing of that document within which to traverse the inventory. The notary then promptly filed the list of assets and liabilities which had been furnished by Lester, but accompanying that list was a statement by the notary that by filing it he did not mean to indicate that he agreed with the values placed on the property by defendant.
Mrs. Lester timely filed pleadings traversing that inventory, alleging that it failed to include some shares of stock in various corporations which shares allegedly belonged to the community, and that it particularly failed to list the indebtedness which defendant’s separate estate owed to the community. She also filed other pleadings, in one of which she alleged that the community assets are divisible in kind.
A hearing on the issues presented by the pleadings was held on September 17, 1969. The matter was taken under advisement and on October 3, 1969, the trial judge assigned written reasons and rendered the judgment from which this appeal was taken. The formal decree was signed on November 7, 1969. The trial court held, *481 in substance, that a notary public should be appointed to effect the partition, that the notary should submit a proces verbal containing his recommendations, that each party should have the right to traverse the proces verbal of the notary, that Mrs. Lester is entitled to be placed in possession of her one-half interest in the community without the prior payment of community debts, and that the question of the indebtedness of defendant Lester to the community would be determined at a later hearing for that purpose.
On October 24, 1969, which was after the above mentioned judgment was rendered but before the decree was signed, the notary who was appointed on October 3 filed a proces verbal reciting in effect that defendant had failed to appear at the hearing scheduled by the notary, that defendant’s counsel objected to the hearing and refused to agree to any type of partition, and that the hearing thereupon was adjourned. The proces verbal concludes with the notary’s statement that “nothing was accomplished.” The record shows that no inventory of the community assets was ever made pursuant to LSA-C.C.P. arts. 3131-3137, a partition was never made or effected by the notary, and the proces verbal filed by the notary did not contain recommendations which could have been homologated or rejected by the Court.
Defendant contends, first, that the trial court erred in ordering a “partition in kind” of the property when no recommendation to that effect was made by the notary and no evidentiary hearing has ever been held to determine whether the property is divisible in kind. Defendant points out, correctly, that no evidence was presented at the hearing held on September 17, 1969, and no finding or recommendation has been made by a notary or by other experts as to whether the property can be divided in kind.
In a judicial partition, the court must determine whether the property can be partitioned in kind. It must order that the partition be made in kind, unless it be proved by the party opposing this method that the property is indivisible by nature, or that it cannot conveniently be divided without a diminution in value or loss or inconvenience to one of its owners. LSA-C.C.P. arts. 4605, 4606 and 4608; Aucoin v. Greenwood, 199 La. 764, 7 So.2d SO (1942) ; Oliver v. Robinson, 221 La. 658, 60 So.2d 76 (1952); Babineaux v. Babineaux, 237 La. 806, 112 So.2d 620 (1959).
It is not essential in every partition suit, however, that the initial judicial determination as to the divisibility of the property be supported by an evidentiary hearing or by a trial on the merits. The pleadings, or the inventory setting out the nature and description of the property, may show conclusively whether it can be partitioned in kind or by licitation. When that circumstance exists, no further proof is required to resolve that issue. Succession of Miller v. Evans, 184 La. 933, 168 So. 106 (1936).
In the instant suit, Mrs. Lester pleaded originally that the community assets were “not divisible in kind.” On September 17, 1969, however, she filed an amended petition in which she changed her position and specifically alleged that the community consisted of movable property and that “the same is divisible in kind"
Defendant Lester filed an answer shortly after this partition suit was instituted alleging that the community consisted primarily of “cattle, farm implements, a small amount of cash, some horses and corporate stock,” all of which “could be divided in kind.” He repeated substantially the same allegation in other pleadings, and maintained consistently up to and through the hearing held on September 17, 1969, that the community assets were divisible in kind. It was not until September 29, 1969, twelve days after the hearing was held and the case had been submitted for decision, that defendant filed a second amended answer in which he alleged for the first time that the community property “was not divisible in kind and must be *482 sold to effect a partition.” In that same pleading he also alleged that the assets must be used “to pay the community creditors.”
At the time the case was tried and submitted for decision, therefore, both parties were in complete agreement that the community property was divisible in kind, and that it should be partitioned in that manner. All of the pleadings showed that the community assets consisted entirely of movable property, which by their nature could be partitioned in kind, and no issue was raised as to whether the community assets were or were not divisible in kind.
We believe that the amended answer filed by defendant on September 29, 1969, after the case had been submitted and a few days before it was decided, was based on defendant’s contention that the community must be liquidated and that the community debts must be paid before any of the assets can be distributed. We thus interpret the amended answer to allege, in substance, that the assets of the community must be sold in order to pay the debts. In view of the prior pleadings filed by defendant, we do not construe this amended answer as alleging that the community assets, consisting entirely of movable property, are incapable of being divided in kind.
The judgment appealed from here decrees only that the property “in the present inventory and not here traversed” be partitioned in kind. The court did not determine that all of the property belonging to the community is divisible in kind, and in any event the judgment which was rendered relating to that issue is not a final judgment in the sense that the court thereafter would be powerless to homologate any other plan for partitioning the assets. In Marionneaux v. Marionneaux, 28 La.Ann. 392 (1876), the Supreme Court appropriately said:
“Whatever may be done by the notary will only amount to a project for a partition, which will not bind any one until the same shall have been presented to the court for final homologation; and from that judgment of the court, homologating the partition, any one interested can appeal.
“This court said in the case of Gay vs. Marionneaux et al. [20 La.Ann. 358] that, ‘according to said article all orders and rulings of courts rendered on all contestations pending the operation of the partition before the notary are interlocutory, and any party feeling aggrieved has his remedy, and may be relieved when the partition is presented for final homologation, and it is from the judgment thus rendered that an appeal would lie, subjecting the whole proceedings and all interlocutory orders to revision of this court.’ 20. An. 358; C.C. 1270, 1290, 1297, 1298, 1299; [Stewart v. Pickard] 1 Rob. 415; C.P. 1028, 1029, 1030; C.C. 1304.”
We conclude that the trial judge did not err in finding that at least a part of the community property could be partitioned in kind. In the first place, we think defendant was bound by his allegations at the time of the hearing that the assets were divisible in kind, and that the trial court was justified in assuming that no issue had been raised as to the divisibility of the property. Secondly, the pleadings and the record show that the community property consisted solely of movable property and stocks, which obviously can be divided in kind, and the pleadings alone adequately support the judgment of the trial court decreeing that some of the property be divided in kind.
Defendant contends, next, that the trial court erred in directing the notary to effect the partition of the items of property “in the present inventory and not here traversed.” His argument is that such a decree constitutes a “piece-meal” or partial partition of the community. We agree that the order constitutes a “piece-meal” or partial partition, but we find it unnecessary to determine whether such a proceeding is illegal or void. The record in the present *483 suit shows that no partition has been made by the notary. He has filed a proces verbal reporting that nothing was accomplished, and he has made no recommendation which can be homologated by the court. The matter thus must be remanded to the trial court in order that a partition can be completed pursuant to the requirements of articles 4601, et seq., of the Louisiana Code of Civil Procedure. Since the matter will have to be remanded, we have decided to amend the judgment appealed from to order that all of the property belonging to the community be partitioned. Each party, of course, is to have the right to traverse the proces verbal or recommendations of the notary and to object to the homologation of the partition. With that amendment, the judgment will not order a piece-meal or partial partition.
Defendant contends, finally, that the community assets must be liquidated and that the community debts must be paid before Mrs. Lester is entitled to be placed in possession of her one-half interest in those assets. He alleges that it is necessary to sell community property to pay these debts, and that he is entitled to an order of court authorizing such a sale. In support of these arguments, defendant cites LSA-C.C. art. 2403, and a number of cases, the principal ones being Tomme v. Tomme, 174 La, 123, 139 So. 901 (1932); Daigre v. Daigre, 230 La. 472, 89 So.2d 41 (1956); and Pennison v. Pennison, 249 La. 587, 187 So.2d 747 (1966).
Article 2403 of the Louisiana Civil Code provides that debts contracted during the marriage “must be acquitted out of the common fund.” Defendant construes this article to mean that the debts must be paid before the property can be partitioned, and he refers us to language used in each of the three cited cases which seems to support that argument.
We do not interpret Article 2403 of the Civil Code as requiring that the community be liquidated before a partition can be made of the assets. And, we do not think the cases cited by defendant support the position which he takes here, although some of the language used in those cases, taken out of context, appears to do so.
In Tomme v. Tomme, supra, that being one of the principal cases relied on by defendant, Mrs. Tomme sued her former husband for a money judgment for “one-half the alleged value” of all the property which belonged to the community at the time of the divorce. Her suit was dismissed on an exception of no cause of action, because she failed to allege that there had been a prior liquidation of the community. In so holding the court stated that neither party had anything to claim “until all the debts are paid or liquidated,” and defendant relies on the language used in making that ruling. The Supreme Court pointed out, however, that the only reason why it was necessary to allege and prove that the community ■ was solvent in that case was that the wife “is not suing for her share of the community property, but for one-half its value,” and that the net value of the estate could not be established until the debts were paid. The court indicated that if she had sued for “her share of the property,” as in the instant suit, then it would have been immaterial whether the community debts had beers paid. In that connection, the court said:
“When the community is dissolved by judgment as in this case, the spouses each get, not half the value of the effects, but each a one-half interest in the effects themselves, which may be divided, partitioned, and it is settled jurisprudence that where the former husband remains in possession of the community property, the wife or her heirs may sue for her share of the property before the community has been liquidated and without alleging that it is insolvent” (Emphasis Added).
Daigre v. Daigre, supra, involved the same type of a proceeding, and the wife’s suit was dismissed on the ground that it *484 involved a “piecemeal partition.” The court observed, however, that:
“While it is true that after divorce the wife, as a joint owner, may sue her husband for a partition of the community property without alleging or proving the liquidation of the community, Giglio v. Giglio, 159 La. 46, 105 So. 95; Rhodes v. Rhodes, 190 La. 370, 182 So. 541; In re F. H. Koretke Brass & Mfg. Co., Ltd., 195 La. 415, 196 So. 917; Butler v. Bolinger, 16 La.App. 397, 133 So. 778, it is not however proper to give a wife a money judgment which is executory without first ascertaining if there are any debts.” (Emphasis Added).
The Pennison case, supra, involved a claim by the husband’s attorney for his fees. The community property had already been sold without opposition, the proceeds of the sale had been deposited in the registry of the court, and the claim of the creditors was directed against those proceeds.
In the instant suit, Mrs. Lester is demanding a partition in kind of the community assets. She is not seeking a money judgment for one-half the alleged value of those assets, and no creditor has intervened in the partition suit. This case differs from all of those cited by defendant, therefore, and we feel that none of the cited cases is applicable here.
The issues which confront us in the present suit are similar to those which were determined in Giglio v. Giglio, 159 La. 46, 105 So. 95 (1925). There, the wife sued her former husband to have the community assets sold to effect a partition. The husband opposed the sale and the partition on several grounds, one of which was that the community was heavily indebted. The trial court rendered judgment ordering the partition in spite of the fact that the community had not been liquidated, and in affirming that judgment our Supreme Court said:
“There are no creditors of either the community or the separate spouses who are opposing the sale to effect a partition, and the defendant is without interest in championing the rights of the creditors, if any there be. Besides, if there are any mortgages on the property to be partitioned, either against the community or the separate spouses, the holders of such mortgages will not be without a remedy to protect their rights.
“It may be, as contended by defendant, that his liabilities largely exceed in amount the value of his interest in the property, and it may be that his interest is under seizure (there is no evidence to this effect), still that fact ivould not deprive the plaintiff of the right to have a sale of the property for the purpose stated." (Emphasis Added).
In Rhodes v. Rhodes, 190 La. 370, 182 So. 541 (1938), a divorced wife sued to partition the community assets, and the husband resisted primarily on the ground that the community was insolvent, and that “the sale to effect a partition must await the liquidation of the debts.” The Supreme Court rejected that defense, stating that “a complete answer to such contention” is found in the cases of Giglio v. Giglio, supra, and Tomme v. Tomme, supra.
The case of In re F. H. Koretke Brass & Mfg. Co., 195 La. 415, 196 So. 917 (1940), involved a question similar to the one being determined here, and the Supreme Court, quoting with approval from the Tomme case, supra, held that “the wife or her heirs may sue for her share of the property before the community has been liquidated.”
Our conclusion is that the trial court did not err in ordering the notary to proceed with the partition of the community assets, even though the community had not been liquidated and the community debts have not been paid. That conclusion is inescapable, we think, since plaintiff is demanding a share of the community assets, rather than a money judgment for one-half the value of those assets.
*485 Although it is not essential that an inventory of the property be made in every case (see LSA-C.C.P. art. 4604), we think an inventory should be made here, because of the many items of property which must be partitioned, the necessity of determining the value of each such item, and the fact that the parties disagree as to whether some items should be included in the list of community assets. We do not feel that the list of assets and liabilities which defendant furnished will serve the purpose of an inventory and appraisal. The parties, of course, must be afforded an opportunity to traverse any inventory which may be made.
In the judgment appealed from, the trial court decreed that defendant did not have the right “to present to the court or to the notary the names and amounts of the community creditors.” We believe this part of the decree should be modified to allow evidence as to any chattel mortgages, liens, judgments or seizures which may affect any specific item or items of community property to be partitioned. It seems to us that evidence to that effect may be relevant in determining whether the partition recommended by the notary should be homologated.
We find no error in that part of the judgment appealed from which orders that the question of the indebtedness, if any, of defendant Lester to the community be referred for hearing before the partition can be completed and homologated. We agree with the trial judge, that the proper way to resolve it is to permit the notary to make such investigation as may be necessary to enable him to complete an inventory or to submit a recommendation in his proces verbal as to the manner in which that alleged indebtedness should be treated. Each party thereafter may traverse the inventory or the recommendations made as to that issue, and then the specific questions presented can be determined by the court.
For the reasons herein set out, the judgment appealed from is affirmed insofar as it decrees: (1) That plaintiff, Mrs. Lester, is recognized as the owner of one-half the assets belonging to the community of acquets and gains formerly existing between her and defendant, and decrees that she is entitled to be placed in immediate possession of her interest in those assets; (2) that a notary, named in the judgment, be appointed to whom the parties are referred in order to effect a partition; and (3) that the question of the indebtedness, if any, of defendant Lester to the community be referred to the notary for hearing. The remaining parts of that judgment appealed from are reversed, and the case is remanded to the district court for further proceedings consistent with the views herein expressed.
One-half the costs of this appeal are assessed to plaintiff-appellee, and the remaining one-half of such , costs are assessed to defendant-appellant.
Affirmed in part, reversed in part, and remanded.