401 So.2d 406 (1981)
Michelle R. ROGERS
v.
Irving F. ROGERS.
No. 14083.
Court of Appeal of Louisiana, First Circuit.
April 13, 1981.
John A. Exnicios, New Orleans, for plaintiff and appellee.
*407 Roger I. Dallam, Gretna, for defendant and appellant.
Before LOTTINGER, EDWARDS and PONDER, JJ.
LOTTINGER, Judge.
Is a husband's retirement pay from the United States Army community or separate property? This is the issue we face on appeal. The issue is not new to Louisiana jurisprudence, but the two circuits previously addressing the question have taken opposite positions. The Third Circuit says retirement pay is community property. Swope v. Mitchell, 324 So.2d 461 (La. App.3rd Cir. 1975) (Marine Corps retirement); Moon v. Moon, 345 So.2d 168 (La. App.3rd Cir. 1977), writs refused, 347 So.2d 250 (La. 1977) (Air Force retirement). The Second Circuit says it is not. DeDon v. DeDon, 390 So.2d 937 (La.App. 2nd Cir. 1980) (Air Force retirement), writs granted February 6, 1981.
The facts are not in dispute and were stipulated basically as follows:
Irving F. Rogers and Michelle R. Naget Rogers were married on February 5, 1955 in Braquys, Meuse, France. Mr. Rogers, then a member of the United States Army stationed in France, was a Louisiana domiciliary at the time of the marriage serving with the U. S. Forces. He has never changed his Louisiana domicile.
After a number of transfers over the next 10 years, Mr. Rogers retired from the United States Army in October, 1965, after completing 20 years of service. He was recalled in September, 1966, and was discharged a second time in September, 1968. The parties continued to reside together as man and wife until July, 1976, at which time they became physically separated. Mr. Rogers returned to Louisiana and Mrs. Rogers stayed in Maryland where she has since resided.
A judgment of divorce was granted on August 22, 1978, based upon the parties living separate and apart for a period in excess of two years. During the entire period of the marriage the domicile of Mr. Rogers was located in Louisiana and domicile is not at issue in this case. There was no premarital agreement entered into prior to the marriage.

THE TRIAL COURT DECISION
After reviewing the stipulated facts and the jurisprudence of Louisiana and other states, the trial judge rendered judgment in favor of Mrs. Rogers, decreeing her to be the owner of 13/44 of each retirement check Mr. Rogers receives.[1] The trial court also determined that Mr. Rogers clears $440.00 per month and that Mrs. Rogers' share of the previous 23 months had not been paid. She was awarded $2,990.00 as a lump sum and was decreed to be owner of a 13/44 portion of every monthly payment made thereafter to Mr. Rogers.

SPECIFICATIONS OF ERROR
Mr. Rogers contends on appeal that the trial court erred in holding that retirement pay is community property and in refusing to refer the partition to a notary.

COMMUNITY PROPERTY
Mr. Rogers argues that military retirement benefits are provided by Congress under its power to raise and support an army. Art. I, Section 8, U. S. Const. He contends that such benefits are federal in nature and that "any conflicting state law must yield to the federal law under the Supremacy Clause of the Constitution." Art. VI, Clause 2, U. S. Const. He cites with favor the recent United States Supreme Court case of Hisquierdo v. Hisquierdo, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), which held that retirement benefits under the Railroad Retirement Act of 1974 (45 U.S. *408 C.A. Section 231 et seq.) cannot be considered community property.
In Hisquierdo, the Supreme Court made abundantly clear the fact that the states, and not the federal government, have the "guiding hand" and "temporal control" over marriage and its incidents. 99 S.Ct. at 808. State family law precepts will be set aside under the supremacy clause only if Congress "has positively required by direct enactment that state law be pre-empted." Id. (emphasis added). For state family law to be pre-empted, it must conflict with the "express terms" of a congressional enactment and "sufficiently injure the objectives of the federal program." Id. 99 S.Ct. at 809. Under this type of analysis, the court determined that the anti-attachment and anti-anticipation section in the Railroad Retirement Act revealed an express congressional intent that railroad retirement benefits be paid only to the employee and not be divided upon termination of the marriage. 45 U.S.C.A. Section 231m.[2] "The critical terms here include a specified beneficiary protected by a flat prohibition against attachment and anticipation." Id.
Mr. Rogers contends that his retirement benefits are paid under laws administered by the Veterans' Administration. He notes that the laws regulating veterans' benefits contain a section almost identical to the section in the Railroad Retirement Act prohibiting assignment, attachment and anticipation. 38 U.S.C.A. Section 3103(a).[3] Under the stipulation of facts made by the parties in this case, there is no indication as to who pays the retirement benefits. The stipulation speaks only of military retirement pay. Mr. Rogers made no showing that he was entitled to veterans' benefits and produced no check stubs to show where his retirement pay comes from. He merely alleges on appeal that the retirement check is paid by the Veterans' Administration. However, as Mrs. Rogers points out and as our research confirms, the military retirement benefits such as those received by Mr. Rogers are not administered by the Veterans' Administration but by the Secretary of the Army. Numerous provisions dealing with military retirement pay for Army regulars and officers appear under Title 10 of the United States Code, which deals with the Armed Forces. Subtitle B of Title 10 concerns the U. S. Army. At least five chapters under Subtitle B of Title 10 relate to retirement requirements, grade and pay. Chapters 363, 365, 367, 369 and 371. Under Chapter 369, 10 U.S.C.A. Section 3966, the Secretary of the Army is required to maintain lists of names of retired officers and enlisted men. Chapter 371 of Title 10 deals with computation of retired pay for Army retirees.
On the other hand, matters handled by the Veterans' Administration are dealt with in Title 38 of the United States Code. The Veterans Administration handles veterans' disability and death compensation, veterans' pensions, veterans' insurance and other veterans' benefits. Significantly, none of the provisions concerning VA benefits in Title 38 is based upon a veteran's eligibility for retirement from the service in which he served. VA benefits, rather, are predicated upon the fact that a person served in the armed forces, not on the fact that a person served in the armed forces long enough to allow him to retire.
We find that the statutory scheme as outlined above shows clearly that military *409 retirement pay, as distinguished from veterans' benefits, is administered by the secretary of the branch of the service in which the retiree served. In this case, the benefits are administered by the Secretary of the Army. Of the statutes in Title 10, U.S.C.A., governing army retirement benefits, only one contains a section prohibiting assignment, attachment or anticipation of these benefits. That section, however, does not deal with a retiree's retirement benefits but with a survivor's benefits, which are not at issue in this case. 10 U.S.C.A. Section 1450(i).[4] One searches the military retirement statutes in vain to find a section similar to the one relied upon in Hisquierdo to hold that the benefits therein were not community.
We hold, therefore, that Congress has not "positively required by direct enactment" that Louisiana's community property laws be pre-empted as to the nature of military retirement benefits. The Second Circuit's reliance on Hisquierdo in DeDon, supra, was, we believe, misplaced. The DeDon decision, as we read it, was based on two propositions:
(1) That Congress provided an anti-attachment and anti-assignment provision in that portion of the military retirement laws dealing with survivor benefit plans; and
(2) That Congress amended the Social Security Act to waive federal immunity in cases involving alimony and child support, but subsequently defined that waiver to preclude cases involving community property claims. See 42 U.S.C.A. Sections 659, 662.[5]
As we noted above, the sections of the military retirement laws dealing with survivor benefit plans are simply inapplicable to this case. There is no survivor benefit plan involved herein. We are dealing, rather, with military retirement benefits paid and payable directly to the retiree, not to the retiree's survivor. The anti-assignment provisions in the survivor benefit plan laws are simply not relevant.
Additionally, the amendment to the Social Security Act providing a waiver of federal immunity for alimony and child support claims does not even purport to control the community or non-community status of retirement benefits. Admittedly, 42 U.S. C.A. Section 662 states that alimony "does not include any payment or transfer of property or its value by an individual to his spouse or former spouse in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." If anything, the definition of the word "alimony" shows that Congress intended to leave the determination of community or non-community status of retirement benefits up to the particular federal laws regulating those benefits and to the particular state laws regulating community property. The definition clearly is not a "direct enactment" by Congress concerning the community or non-community nature of all federal retirement benefits.
We therefore reject the reasoning of the DeDon decision as well as the decision from the Alaska Supreme Court upon which DeDon relied. See Cose v. Cose, 592 P.2d 1230 (Alaska 1979). We choose, instead, to follow the lead of the Third Circuit in Moon v. *410 Moon and Swope v. Mitchell, supra, and of other state courts which hold that military retirement benefits attributable to years of the marriage are community property. See, e. g., In re Marriage of Fithian, 10 Cal.3d 592, 111 Cal.Rptr. 369, 517 P.2d 449 (1947), cert. denied 419 U.S. 825, 95 S.Ct. 41, 42 L.Ed.2d 48; Mora v. Mora, 429 S.W.2d 660 (Tex.Civ.App.1968); and In re Marriage of Musser, 70 Ill.App.3d 706, 27 Ill.Dec. 240, 388 N.E.2d 1289 (1979).
We therefore affirm the trial court's determination that a portion of the military retirement benefit is community and we affirm his award of the lump sum of the payments due and owing to the wife.

MANNER OF PARTITION
Mr. Rogers claims the trial court erred in failing to appoint a notary to divide the community property. He contends that there are other community assets and liabilities besides the retirement benefit which should be identified, inventoried and partitioned according to law. Under La.C.C.P. art. 4605, if the court finds that the plaintiff is entitled to a partition it "shall appoint a notary to make the partition in accordance with the law." Mr. Rogers asserts that this article mandates that the court appoint a notary to effect the partition.
Mrs. Rogers, however, contends that the only issue before the trial court was the nature and value of the retirement benefit; that Mr. Rogers can have other assets and liabilities partitioned in another proceeding; and, alternatively, that Mr. Rogers is estopped to bring up the existence of other assets and liabilities because he failed to do so in his answer and other pleadings.
While it is true that Mrs. Rogers' suit for partition is almost completely directed towards the retirement benefit, her petition alleges that she and Mr. Rogers "acquired community property during their marriage" and that she "is unwilling to continue as owner in indivision of the property and desires a partition thereof." She prayed for judgment ordering a partition in kind of the retirement benefit and for appointment of a notary public to make the partition. We do not find it necessary to decide whether, in all partition proceedings, the trial court is required to appoint a notary. We can conceive of cases in which the appointment of a notary would serve no purpose, particularly when the assets to be partitioned are few and the partition itself is uncomplicated. In this case, however, Mrs. Rogers mentioned the existence of community property in her petition and prayed for appointment of a notary to effect the partition of the retirement benefit. Mr. Rogers claims that all of the community assets and liabilities should be included in the partition.
To avoid a piecemeal partition and promote efficiency and economy in the administration of justice, we remand this case to the trial court for the purpose of appointing a notary to effect a partition of all community assets in accordance with law. See Lester v. Lester, 245 So.2d 478 (La.App.3rd Cir. 1971), writ refused, 258 La. 366, 246 So.2d 684.
Therefore, for the above and foregoing reasons, the decision of the trial court regarding the community nature of the retirement benefits is affirmed. The case is remanded for the purpose of appointing a notary to effect a partition of all community assets in accordance with law. Costs of this appeal are to be paid by the appellant.
AFFIRMED AND REMANDED.
NOTES
[1] The formula used by the court, which is not in dispute, is based on a fraction, the numerator of which is the number of years the parties were married while Mr. Rogers was in the military and the denominator of which is the number of years Mr. Rogers was in the military. The fraction is 13/22. This amount is community property and, as co-owner of one-half of the community, Mrs. Rogers is entitled to one-half of 13/22 which equals 13/44.
[2] 45 U.S.C.A. Section 231m provides:

"Notwithstanding any other law of the United States, or of any state, territory or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated."
[3] 38 U.S.C.A. Section 3101(a) provides, in pertinent part:

"Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."
[4] 10 U.S.C.A. Section 1450(i) provides:

"An annuity under this section is not assignable or subject to execution, levy, attachment, garnishment, or other legal process."
[5] 42 U.S.C.A. Section 659(a) provides:

"Notwithstanding any other provision of law, effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to legal process brought for the enforcement against such individual of his legal obligations to provide child support or make alimony payments."
42 U.S.C.A. Section 662 in pertinent part provides that "Alimony":
"... does not include any payment or transfer of property or its value by an individual to his spouse or former spouse in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses."