[L.A. No. 30222. In Bank. May 13, 1974.]

IRENE E. CARLSON, Plaintiff and Appellant, v.
GARY LEE CARLSON et al., Defendants and Respondents.

**COUNSEL**

Robert B. Maxwell and William A. Reppy for Plaintiff and Appellant.

Gertrude D. Chern as Amicus Curiae on behalf of Plaintiff and Appellant.

Milton Posnick and Thomas, James, Pendleton & Posnick for Defendants and Respondents.

**OPINION**

**McCOMB, J.**—Plaintiff appeals from an order of the Superior Court of Ventura County granting a motion by defendants Gary Lee Carlson and Brent Earl Carlson for summary judgment.

*Facts:* Plaintiff and Carl G. Carlson (decedent) were married in 1949 and lived together almost continuously until his death in July 1971. In 1954, defendant Metropolitan Life Insurance Company (Metropolitan) issued a group civil service life insurance policy under the Federal Em-

ployees' Group Life Insurance Program (EGLI);[1] and decedent became insured thereunder by reason of his employment by the United States government at the Naval Missile Center, Point Mugu, California. During the marriage, both parties worked, and all premiums were paid from community property earnings. At the time decedent became insured under the policy, he named plaintiff as beneficiary; but in June 1971 he changed the beneficiary, designating in place of plaintiff his sons, defendants Gary Lee Carlson and Brent Earl Carlson. No consideration was given to plaintiff at the time of the change of beneficiary, and the change was made without her knowledge or consent.

Decedent's coverage under the policy was in the amount of $24,000; and after his death plaintiff brought this action, seeking to recover one-half the proceeds as her community interest therein. She named as defendants Metropolitan and the sons. Metropolitan paid the proceeds into court and was dismissed from the action. Thereafter, the trial court granted the motion of defendant sons for summary judgment, and this appeal followed.[2]

Question: ■ *Where community property funds were used for payment of the premiums for coverage under a life insurance policy purchased by an employee of the federal government under EGLI, does the spouse have a right to one-half the proceeds payable after the insured's death?*

*Yes.* ■ Defendants recognize that if state law controls to the exclusion of federal law, plaintiff is entitled to one-half the proceeds of the insurance here involved, since admittedly all the premiums were paid with community property funds. (*Sieroty* v. *Silver,* 58 Cal.2d 799, 803 [26 Cal.Rptr. 635, 376 P.2d 563]; *Grimm* v. *Grimm,* 26 Cal.2d 173, 175 [1] [157 P.2d 841].) Relying upon *Wissner* v. *Wissner,* 338 U.S. 655 [94 L.Ed. 424, 70 S.Ct. 398], however, defendants contend that Congress has spoken with force and clarity in allowing a decedent to select the beneficiary of insurance issued to him under the EGLI program and that such congressional mandate cannot be frustrated by California's community property laws.

But *Wissner* did not involve the EGLI program. Rather, it dealt with a policy issued under the National Service Life Insurance Program (NSLI) for members of the armed services;[3] and there are important differences in the programs, convincing this court that Congress has not spoken with

---

[1] 5 United States Code sections 8701-8716.

[2] Since defendant Metropolitan has been dismissed from the action, all references hereinafter made to "defendants" will be to defendant sons.

[3] 38 United States Code sections 701-724 (formerly §§ 801-823).

force and clarity in the respect urged and that, accordingly, the principles laid down in *Wissner* are inapplicable here.

To begin with, Congress obviously intended a special policy for servicemen. The NSLI program was first adopted in 1940 at the commencement of World War II to provide low cost life insurance to those who might go to war in the service of their country. It was considered to be in the national interest to protect the serviceman's choice of beneficiary, particularly in view of the phenomenon of changes in marital circumstances during periods of prolonged separation necessitated by military policy.

In *Wissner,* the record shows that the serviceman and his wife were estranged at or shortly after the time he entered the service; that he sought a divorce from his wife; and that, without his wife's knowledge or consent, he designated his parents as beneficiaries under the policy. Soon thereafter, while serving in India, he died. Under such facts, it was held that the congressional intent that the serviceman's designated beneficiaries should receive the entire proceeds, state law notwithstanding, was controlling.[4]

With respect to the EGLI program, there is no overriding national interest such as that found to exist with regard to the NSLI program. Under EGLI, the government, in offering the group life insurance plan, acts as any other general employer would. Congress has provided an opportunity for federal employees to receive a basic life insurance plan at group rates, which plan does not differ materially from private employees' group life insurance plans. The sacrifices associated with military service, and especially long-term, remote assignments with inherent risks, is not found in ordinary civil service employment. As a result, there is no basis for Congress's having the same concern to protect civil service employees as it has in protecting servicemen.

Under the NSLI program, Congress has, as pointed out in *Wissner,* clearly emphasized an intent to limit death benefits to the designated beneficiary; but a similar intent was not expressed in the EGLI legislation. Thus, the NSLI program specifically provides that the insured "shall have the right to designate the beneficiary or beneficiaries . . . and shall . . . at all times have the right to change the beneficiary or beneficiaries . . . ." (38 U.S.C. § 717.) No such specific designation is found in the EGLI program. There, the statutory language merely allows that the order of precedence would be "[f]irst, to the beneficiary or beneficiaries designated

---

[4]As will hereinafter appear, the NSLI program limits permissible beneficiaries to a widow, widower, child, parent, brother, or sister of the insured; but the beneficiaries designated by the insured in *Wissner* fell within the prescribed class.

by the employee . . . ." (5 U.S.C. § 8705.) While such language permits the insured to designate a beneficiary, it is not unlike that found in all insurance policies and does not show the clear, unequivocal congressional mandate required for preemption.

Likewise, the NSLI program limits permissible beneficiaries to a "widow, widower, child, parent, brother or sister of the insured" (38 U.S.C. § 716, subd. (b)); but no such restriction is found in the EGLI program. Accordingly, under the NSLI program, Congress has emphasized a desire to protect servicemen by prohibiting spurious beneficiaries; but employees under the EGLI program are free to designate any beneficiary of their choice, thus further demonstrating the close relationship between that program and similar private employees' group life insurance plans.

Additionally, and of paramount importance, the *government* is the insurer in the NSLI program, necessitating public appropriations to finance any deficit of death payments (38 U.S.C. § 719), while qualified private insurance companies (such as Metropolitan) serve as insurers under the EGLI program (5 U.S.C. § 8709), requiring accurate actuarial data to project rates sufficient to cover the costs of administration and death benefits and to generate a profit. The government, in procuring insurance on behalf of its employees from private insurance carriers under EGLI, acts not as an insurer, but as the procuring agent. (See *Brinson* v. *Brinson,* 334 F.2d 155, 158 [10 A.L.R.3d 795].)

Furthermore, as pointed out in *Wissner,* the NSLI program is a low cost program, while under the EGLI program employees contribute 66⅔ percent "consistent with the lowest schedule of basic premium rates generally charged for new group life insurance policies issued to large employers" (5 U.S.C. §§ 8707, 8711), the government supplementing the employees' contributions as part of their over-all compensation (5 U.S.C. § 8708), as do many private employers.

It is also significant that whereas the NSLI program provides that the government may waive payment of premiums upon application due to total disability (38 U.S.C. § 712), no similar provision is found in the EGLI program. Any waiver of premium provision under the latter program is thus apparently left to the particular insurance carrier.

Additionally, in the NSLI program Congress specified that no person could have a vested right to any installment, but no such anti-vesting provision is included in the EGLI program. Likewise, although in the NSLI program Congress specifically restricted the policies from all contests (38 U.S.C. § 710), it made no such restriction in the EGLI program. And

whereas under the NSLI program acts of mutiny, treason, spying, desertion, or conscientious objections will result in a forfeiture of all rights (38 U.S.C. § 711), no such provision is found in the EGLI program.

The overriding national interest in affording protection to the serviceman in his service to the country, with a resultant enhancement of his morale, is aptly pointed out in *Wissner,* where the Supreme Court of the United States said: "Certainly Congress in its desire to afford as much material protection as possible to its fighting force could wisely provide a plan of insurance coverage. Possession of government insurance, payable to the relative of his choice, might well directly enhance the morale of the serviceman. The exemption provision is his guarantee of the complete and full performance of the contract to the exclusion of conflicting claims. The end is a legitimate one within the congressional powers over national defense, and the means are adapted to the chosen end. . . . *However 'vested' her [the widow's] right to the proceeds of nongovernmental insurance under California law, that rule cannot apply to this insurance.*" (Italics added; pp. 660-661 of 338 U.S. [94 L.Ed. p. 430].)

This court in *In re Marriage of Fithian,* 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449], recently held that the supremacy clause (art. VI, cl. 2) of the United States Constitution does not forbid the characterization of military retirement pay as community property in accordance with established principles of California law, nor preclude division of the pay as such property, in marriage dissolution proceedings, to the extent that the serviceman was married while on active duty.

In *Fithian,* we said at pages 598-599: "[W]e are asked to measure the property involved herein against a five-part *Wissner* 'test' which purportedly determines whether Congress intended a federally created property right to be immune from community property characterization by the states. According to this asserted yardstick, federal benefits must be the separate property of the recipient if (1) they were intended to directly enhance morale; (2) they were intended to be paid from congressional appropriations; (3) their administration costs were intended to be borne by the United States; (4) premiums or contributions to the system were intended to be low; and (5) they were intended to afford as much material protection as possible to the recipient. Although the federal military retirement pay system doubtless satisfies each of the asserted criteria, the source of these purported standards is a tortured reading of the *Wissner* opinion. No precise language in *Wissner* is quoted in the formulation of this 'test' of congressional intent; rather the standard is devised by paraphrasing a series of statements by the court taken out of context and

artificially grouped together. Aside from the vacuous content of the asserted 'tests,' which are so broad as to embrace virtually all federally created benefit plans, *Wissner* makes plain that it is embarking on the task of specific statutory construction, and not setting forth general propositions by which to evaluate the goals of Congress in other legislative enactments."

It was concluded that in the legislative enactment involved in *Fithian*, that is, legislation pertaining to federal military retirement pay, there was no indication by Congress that treating the pay as community property would circumvent the congressional scheme. In the present case, there would be even less reason to hold that Congress has indicated with force and clarity that the benefits constitute the separate property of the insured.

It will be noted, incidentally, from the italicized portion of the quotation from *Wissner* hereinabove set forth, that the Supreme Court of the United States limited its ruling therein to *government* insurance and indicated that it did not extend to nongovernmental insurance. As previously pointed out, the government is not the insurer under the EGLI program. That program is administered by private insurance companies, and liabilities thereunder would not ordinarily be dischargeable out of congressional appropriations. (See 5 U.S.C. §§ 8709-8712.)

The order is reversed.

Wright, C. J., Tobriner, J., Mosk, J., Burke, J., Sullivan, J., and Clark, J., concurred.

Respondents' petition for a rehearing was denied June 12, 1974.