[L.A. No. 30298. In Bank. Dec. 12, 1974.]

In re the Marriage of MARY LEE and HARRY LLOYD MILHAN.
MARY LEE MILHAN, Appellant, v.
HARRY LLOYD MILHAN, Respondent.

**COUNSEL**

Jack A. Otero for Appellant.

Price, Postel & Parma, Gary R. Ricks and C. Michael Cooney for Respondent.

**BURKE, J.**\*—In this case we determine the extent to which the trial court in a marriage dissolution proceeding may exercise jurisdiction over a National Service Life Insurance policy issued to one of the parties but

---

\*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

paid for with community property funds. ▮▮ We conclude that, in view of federal law protecting an insured's interest in and control over such military policies, the trial court is without authority to divest the insured of such interest or control. Specifically, the court may not award the policy to the other spouse, may not deprive the insured of his right to change the beneficiary of the policy, and may not require the insured to surrender the policy in order to obtain, and thereupon divide and distribute, its cash value. We hold, however, that if sufficient community assets exist aside from the policy, the trial court may award the other spouse an amount therefrom equivalent to his or her community interest in the policy.

The parties ("Husband" and "Wife") were married in 1944, following Husband's graduation from the United States Naval Academy. Husband became an ensign in the United States Navy and, during the course of his career, he obtained the two policies at issue, a National Service Life Insurance Policy with a cash value, at time of trial, of $2,190, and a Navy Mutual Aid Association Policy, with a cash value of $2,293. It appears undisputed that Husband paid the premiums on these policies from community income. Husband retired in 1965 and began receiving military retirement pay in the approximate amount of $600 monthly. The parties separated in 1968.

On May 2, 1972, the trial court entered judgment in the dissolution proceedings, dividing the community property between the parties and finding that the subject life insurance policies and military retirement pay were Husband's separate property. Wife appeals, contending that she should have been awarded her community share of these assets.

▮▮ Initially, it is now clear that military retirement pay attributable to employment during marriage may, if vested in interest, be treated as community property and subject to equal division between the spouses upon dissolution of their marriage. (*In re Marriage of Fithian,* 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449].) Husband, now aware of our recent *Fithian* opinion, reluctantly agrees that the judgment below must be reversed and remanded on the issue of retirement pay. ▮▮ He continues to contend, however, that the two life policies were and are his separate property over which the trial court had no jurisdiction.

Husband relies upon the principles set forth by the United States Supreme Court in *Wissner* v. *Wissner,* 338 U.S. 655 [94 L.Ed. 424, 70 S.Ct. 398], also involving an asserted community interest in a National Service

Life Insurance policy.[1] We discussed *Wissner* in our *Fithian* opinion, as follows: "In *Wissner,* the trial court ordered the beneficiary of life insurance proceeds under the National Service Life Insurance Act (38 U.S.C. § 701 et seq.) to pay half the proceeds, as community property, to the deceased soldier's widow. The United States Supreme Court held the order invalid under the supremacy clause on the ground that the specific language of the act, [fn. omitted] construed in the light of congressional intent, gave the serviceman the absolute right to choose the beneficiary of the policy and hence was invulnerable to the application of state community property law.

"*Wissner* does not require community property states to classify the proceeds of National Service Life Insurance policies as separate property, but only to refrain from administering those incidents of community property law which would frustrate the congressional plan. In *Estate of Allie* (1958) 50 Cal.2d 794 [329 P.2d 903], we held that insurance proceeds payable to the serviceman's estate may be considered community property since such a classification does not hinder the insured's free choice of beneficiaries. It is clear, therefore, *Wissner* did not establish a general rule that federal employment benefits cannot be treated as community property, but merely construed a specific statute in view of the congressional intent it embodies. [Fn. omitted.] *Wissner* has no controlling impact on the case at bar except to mandate us to examine the legislative goals behind the federal military retirement pay system." (10 Cal.3d at pp. 597-598.)

We believe that the foregoing analysis of *Wissner* is equally pertinent to the case before us. *Wissner* does not forbid the states from applying their community property laws to achieve an equitable division of marital property, so long as the operation of those laws does not frustrate congressional intent. Clearly, given the express congressional intent to assure the serviceman the absolute right to select his beneficiaries, the state courts could not require him to name his former spouse as beneficiary. By a parity of reasoning, the courts could not require him to cancel or surrender the policy and to pay half its cash value to his spouse, for the forced surrender of a military policy obviously would defeat Congress' purpose to provide low-cost life insurance protection to servicemen and their beneficiaries. (See *Carlson* v. *Carlson, supra,* 11 Cal.3d 474, 477.)

---

[1] We have assumed, in the absence of any contrary argument by Wife, that Husband's policies (and especially his Navy Mutual Aid Association policy) possess characteristics substantially identical to the National Service Life Insurance policy involved in the *Wissner* case. It should be noted that some federal life insurance policies differ substantially from the NSLI policy, justifying differences in treatment upon the insured's death or the dissolution of his marriage. (See, e.g., *Carlson* v. *Carlson,* 11 Cal.3d 474 [113 Cal.Rptr. 722, 521 P.2d 1114], involving a policy issued under the Federal Employees' Group Life Insurance program.)

On the other hand, *Wissner* seemingly would not prohibit the trial courts from evaluating the community interest in a military life policy and awarding the insured's spouse an equivalent amount in *other* property available for disposition.[2] Under such a procedure, Husband in the instant case would retain both policies in force, along with the right to change the beneficiaries thereunder. Wife would be awarded one-half of the cash value of those policies, payable out of assets which otherwise would be awarded to Husband. Provision could be made for Husband to discharge this obligation over a period of time if insufficient property exists at the time of dissolution. In no event, however, should Husband be ordered to surrender, or otherwise impair, his policies in order to satisfy Wife's community claim, for such an order would violate the overriding federal law discussed above.

The judgment is reversed and the trial court directed to enter judgment in accordance with this opinion.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.

---

[2]Life insurance policies purchased with community funds ordinarily are considered community assets in which each spouse owns a present, existing and equal interest. (See *Tyre* v. *Aetna Life Ins. Co.,* 54 Cal.2d 399, 402-403 [6 Cal.Rptr. 13, 353 P.2d 725]; *Grimm* v. *Grimm,* 26 Cal.2d 173, 175 [157 P.2d 841].) In analogous situations, it has been suggested that upon dissolution of the marriage the trial court may allow one of the spouses to retain such a community asset so long as commensurate provision is made for the other spouse. (See *Waite* v. *Waite,* 6 Cal.3d 461, 473-474 [99 Cal.Rptr. 325, 492 P.2d 13] [judge's retirement pension]; *Phillipson* v. *Board of Administration,* 3 Cal.3d 32, 46 [89 Cal.Rptr. 61, 473 P.2d 765] [state employee's retirement pension]; *Gelfand* v. *Gelfand,* 136 Cal.App. 448, 455-456 [29 P.2d 271] [insurance policy].)

Nothing in *Wissner* suggests that an equitable division of community property is precluded simply because an NSLI policy is involved. *Wissner* did state that the husband's *beneficiary* (his mother) could not be required to repay to the wife either "the very money received from the Government or an equivalent amount . . . ." (338 U.S. 655, 659 [94 L.Ed. 424, 429].) Obviously, to require the beneficiary to turn over an equivalent amount to the wife would directly frustrate congressional intent to permit the husband's beneficiary to retain *all* of the proceeds from the NSLI policy. In the instant case, both the beneficiary and the wife may be protected by making use of other property available for distribution, in the manner set forth above.