[L.A. No. 30712. July 12, 1977.]

In re the Marriage of ANGELA and JESS H. HISQUIERDO.
JESS H. HISQUIERDO, Respondent, v.
ANGELA HISQUIERDO, Appellant.

**COUNSEL**

Ray C. Bennett, Howard M. Fields and Bennett & Fields for Appellant.

James D. Endman for Respondent.

## Opinion

**MOSK, J.**—We are called upon to decide whether benefits afforded by the Railroad Retirement Act (45 U.S.C. § 231 et seq.) are community property.[1]

Jess and Angela Hisquierdo were married in 1958 and separated in 1972. Wife was employed throughout the period of the marriage; they had no children. At the time of the dissolution of marriage hearing in 1975, she was 53 years old and husband was 55. He had been employed by the Atchison, Topeka & Santa Fe Railroad from 1942 to 1975, and thereafter by the Los Angeles Union Passenger Terminal. Both of these employments entitle him to retirement benefits under the act when he reaches the age of 60.

In January 1975, husband filed a petition for dissolution of the marriage. The trial court's interlocutory judgment divided the community property by awarding him the residence of the parties, in which there was an equity of $12,828, and furniture and fixtures which had a value of $500. Wife was awarded $100 in a mutual fund, and a 1965 automobile. In order to equalize distribution, husband was ordered to pay wife $6,364, plus interest, in monthly installments. The court refused to grant wife any interest in husband's railroad retirement benefits, or the equivalent thereof, on the ground that she had no community interest in those funds. Wife appeals, contending that the retirement benefits which accrued to husband during the 13 years of marriage constitute community property, and that the trial court erred in refusing to award her one-half of such benefits.

The United States Supreme Court in *Wissner* v. *Wissner* (1950) 338 U.S. 655 [94 L.Ed. 424, 70 S.Ct. 398], held that California's community property law could not be applied to the proceeds of a policy for National Service Life Insurance, claimed by a widow who was not the beneficiary of the policy, because Congress had made it plain, by providing for the insured serviceman's right to change the beneficiary, that the proceeds belong to the beneficiary designated by the insured. In California, retirement benefits resulting from employment during marriage are community property, subject to division in the event of dissolution of the marriage. (*Waite* v. *Waite* (1972) 6 Cal.3d 461, 470

---

[1]The Railroad Retirement Act of 1937 (45 U.S.C. § 228a et seq.) was completely revised and amended by the Railroad Retirement Act of 1974, cited above. All references in this opinion are to the later enactment.

[99 Cal.Rptr. 325, 492 P.2d 13] (overruled on other grounds in *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, fn. 14 [126 Cal.Rptr. 633, 544 P.2d 561]).) Several recent decisions have held that pension rights created under federal law constitute community property to the extent that they are attributable to employment during marriage. (E.g., *In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449]; *Bensing* v. *Bensing* (1972) 25 Cal.App.3d 889 [102 Cal.Rptr. 255]; *In re Marriage of Karlin* (1972) 24 Cal.App.3d 25 [101 Cal.Rptr. 240]; but see *In re Marriage of Brown, supra,* 15 Cal.3d 838, 851, fn. 14.)

■ The principle that has emerged from these decisions is that whenever there is a conflict between a federal statute affording annuity or insurance benefits and state community property laws the federal statute must prevail. However, if the intent of Congress in creating the federal right is not violated by application of California's community property laws, then the status of such rights is governed by California law. (See, e.g., *Fithian, supra,* 10 Cal.3d at p. 598; *In re Marriage of Milhan* (1974) 13 Cal.3d 129, 132 [117 Cal.Rptr. 809, 528 P.2d 1145].) ■ Our task, then, is to determine whether Congress intended that railroad retirement benefits remain the separate property of the employee.

Husband relies upon various provisions of the act as indicating an intent by Congress to render annuities payable thereunder the separate property of the spouse whose employment is covered by the act. He first quotes the following provision contained in section 231m: "Notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, *nor shall the payment thereof be anticipated . . . .*" (Italics added.)

This provision, with the exception of the clause italicized, is substantially similar to other statutes placing federal and state retirement or insurance benefits beyond the grasp of creditors. (E.g., 10 U.S.C. § 1440 (military annuities); 38 U.S.C. § 3101 (veteran's benefits); Gov. Code, § 21201 (retirement annuities for state employees).) Such statutes do not prevent a pension from being treated as community property, for as was said in *Phillipson* v. *Board of Administration* (1970) 3 Cal.3d 32, 44 [89 Cal.Rptr. 61, 473 P.2d 765], "Plaintiff [wife] . . . claims not as a creditor, but as an owner with a 'present, existing, and equal interest.' [Citations omitted.] The recognition of an ownership claim cannot be described as

the levy of execution, garnishment, attachment or assignment of property."[2]

The prohibition against anticipation of payment of railroad retirement benefits in section 231m does not alter this conclusion. The purpose of that provision is to assure that railroad annuities not yet paid to the beneficiary are exempt from the claims of creditors. The clause is the functional equivalent of the prohibition against attachment of veteran's benefits "either before or after receipt by the beneficiary" (38 U.S.C. § 3101(a)), and was not designed to alter the essential purpose of section 231m, i.e., to bar creditors of the beneficiary from reaching annuity payments, rather than to prevent a spouse from vindicating her ownership interest in the pension.

Husband next asserts that the act provides a spouse (or widow/widower) with a right to benefits which are separate and distinct from the benefits accorded to the railroad employee, and that the intent of Congress in granting separate benefits would be frustrated by treating the employee's pension as community property. He points to provisions of the act which grant a separate annuity to a spouse who reaches a certain age and meets other qualifications. (45 U.S.C. § 231a(c)(1) and (3).) The spouse's annuity terminates upon divorce. (45 U.S.C. § 231d(c)(3)(B).)[3] A widow or widower is also entitled to an annuity. (45 U.S.C. § 231a(d)(1)(i).)

In circumstances in which the surviving spouse of a deceased employee is entitled to a separate annuity, our holding in *Fithian*

---

[2] *Wissner* relies upon an exemption clause prohibiting the "seizure" of proceeds of National Service Life Insurance as justification for its conclusion that the designated beneficiary of the policy may not be compelled to pay one-half of the proceeds to the widow as her share of the community property. As we read *Wissner*, this determination was based upon the court's conclusion that to allow the widow to "capture" the proceeds would frustrate Congress' intent to assure that the serviceman had the right to designate the recipient of the insurance. (338 U.S. at p. 661 [94 L.Ed. at p. 430].) In a number of cases, despite the existence of creditor exemption statutes similar to the one involved here (10 U.S.C. § 1440), California has treated federal annuities as community property (e.g., *Fithian*; *Bensing* v. *Bensing, supra,* 25 Cal.App.3d 889; *In re Marriage of Karlin, supra,* 24 Cal.App.3d 25.) In *Fithian* the United States Supreme Court denied certiorari. (419 U.S. 825 [42 L.Ed.2d 48, 95 S.Ct. 41].)

[3] Husband mistakenly asserts that a congressional intent to terminate a divorced spouse's right in the railroad employee's pension is demonstrated by the provision of section 231d(c)(3)(B) that a spouse's entitlement to an annuity shall end upon divorce. However, as the section makes clear, the provision refers not to any interest the spouse may have in the employee's pension but in the separate benefits granted the spouse under the act.

provides the answer. There, in reply to an assertion of the husband that Congress did not intend a military retirement pension to constitute community property because it had created an annuity plan for widows but not ex-wives, we stated, "The point is not persuasive. Congress' concern for the welfare of soldiers' widows sheds little light on Congress' attitude toward the community treatment of retirement benefits, particularly since those benefits do not survive the serviceman regardless of his marital status at death. It is not incongruous for Congress to supply a program to aid widows, who no longer have husbands to provide sustenance, and omit to do so for ex-wives who can rely on state family law concepts of support, alimony, and community property for a source of income." (10 Cal.3d at p. 600.)

The mere fact that distinct benefits are provided by the act for the retired employee and his spouse (or widow/widower) does not indicate an intention that the employee's annuity should be separate property. To accede to such proposition would imply Congress intended that although a spouse is entitled to both a separate annuity and the support of the railroad employee during marriage, both of these benefits are withdrawn upon divorce. It seems unlikely that Congress proposed to leave a divorced spouse without any assistance whatever stemming from the employee's entitlement to a pension during marriage. Rather, as in *Fithian*, the fact that Congress made no provision for a former spouse in the act is more rationally explained by its reliance upon state property law to protect an ex-wife's interest in the railroad employee's annuity.

Husband also contends that railroad retirement benefits under the act are similar in many respects to National Service Life Insurance proceeds and that, therefore, his annuity should, like the insurance proceeds in *Wissner*, be held to constitute his separate property. But, as we note above, the fundamental premise of *Wissner* was that Congress intended a serviceman to have an absolute right to change his beneficiary and that to require the designated beneficiary to pay over the proceeds of the policy to the widow would frustrate that intent. Husband does not point to any similar provision in the railroad retirement act. In any event, as we held in *In re Marriage of Milhan, supra,* 13 Cal.3d 129, 133, *Wissner* does not prohibit a court from evaluating the community interest in a military life policy and awarding the wife of the insured spouse an equivalent amount in other property available for distribution.

Nor are we persuaded by husband's analogy to benefits payable under the Social Security Act. (42 U.S.C. § 401 et seq.) He claims that the right

to railroad retirement pensions is a statutory right granted by Congress, not a contractual benefit awarded for services rendered and that, therefore, his pension does not constitute community property. He declares that the act is in many respects similar to the Social Security Act, that the two pension systems are coordinated with one another, that social security annuities have been held to be statutory rather than contractual in nature (*Flemming* v. *Nestor* (1960) 363 U.S. 603, 611 [4 L.Ed.2d 1435, 1444-1445, 80 S.Ct. 1367]), and therefore a similar result must follow with respect to railroad retirement pensions.

The foregoing proposition is unsupported by authority. Although there are some similarities between social security benefits and railroad retirement pensions, the same may be said regarding military retirement pensions which we held in *Fithian* and its progeny to constitute community property. Thus, we are not convinced by husband's argument.

Finally, husband relies upon a Texas case which holds that in a divorce action a wife may not be awarded a portion of her husband's railroad retirement pension when such benefits are not due until some future date. (*Allen* v. *Allen* (Tex.Civ.App. 1962) 363 S.W.2d 312.) We do not find *Allen* persuasive for all the reasons discussed herein. (Compare *In re Marriage of Brown, supra*, 15 Cal.3d 838, 851.)

The judgment is reversed and the cause is remanded to the trial court for disposition of property in a manner consistent with this opinion.

Bird, C. J., Tobriner, J., Clark, J., Richardson, J., Manuel, J., and Sullivan, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.