*In re* MARRIAGE OF JAMES PATRICK MUSSER *et al.*—(JAMES PATRICK MUSSER, Petitioner-Counterrespondent-Appellee, *v.* MARGARET MONA MUSSER, Respondent-Counterpetitioner-Appellant.)

Fourth District   No. 15012

Opinion filed April 18, 1979.

TRAPP, J., dissenting.

Richard L. Heavner, of Welsh, Kehart & Shafter, P. C., of Decatur, for appellant.

Michael I. Campbell, of Hull, Campbell, Robinson & Gibson, of Decatur, for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

Is a military retirement pension "marital property" under the Illinois Marriage and Dissolution of Marriage Act?

In short—yes.

We reverse.

Margaret and James Musser were married in England on November 24, 1956, while James was in military service. As a result of his service from December 22, 1954, to January 1, 1975, he annually receives military retirement pay of $6,335.80. On January 6, 1978, Margaret sought a dissolution of the marriage.

At the time of the dissolution hearing, their daughter was 19 and married and their son was 18 and in high school. James was employed as an automobile salesman earning $11,326 in 1977. When he began selling automobiles 2½ years earlier, he earned approximately $7,000 per year. Margaret had been employed at a bank in Decatur, Illinois, for nearly 2½ years at the time of the hearing and earned $7,016.42 in 1977. Prior to this employment she had worked for 1 year at a jewelers in Decatur and had worked—full or part time—in England from 1968 to 1973.

The trial court entered a judgment on May 1, 1978, dissolving the marriage and ordering James to pay $30 per week child support and $50 per month for 1 year as maintenance. The judge also held that the military retirement pension was the exclusive nonmarital property of James. On appeal, Margaret contends that the military retirement pay is marital property.

The Illinois Marriage and Dissolution of Marriage Act defines marital property as follows:

> "(a) For purposes of this Act, 'marital property' means all property acquired by either spouse subsequent to the marriage, except the following, which is known as 'non-marital property':
>
> > (1) property acquired by gift, bequest, devise or descent;
> >
> > (2) property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent;
> >
> > (3) property acquired by a spouse after a judgment of legal separation;
> >
> > (4) property excluded by valid agreement of the parties;
> >
> > (5) the increase in value of property acquired before the marriage; and
> >
> > (6) property acquired before the marriage." (Ill. Rev. Stat. 1977, ch. 40, par. 503.)

Thus, all property acquired after marriage is "marital property" unless specifically excepted. Margaret Musser argues that since a military retirement pension does not fit within any of the six exceptions, it must be

marital property. James Musser claims that the pension is not marital property because it is simply not "property."

While the various community property States have uniformly held that military retirement pay is property subject to division upon dissolution of marriage (*Van Loan v. Van Loan* (1977), 116 Ariz. 178, 568 P. 2d 1076; *In re Marriage of Wilson* (1974), 10 Cal. 3d 851, 519 P. 2d 165, 112 Cal. Rptr. 405; *Ramsey v. Ramsey* (1975), 96 Idaho 672, 535 P.2d 53; *Otto v. Otto* (1969), 80 N.M. 331, 455 P.2d 642; *Mora v. Mora* (Tex. Civ. App. 1968), 429 S.W.2d 660; *Wilder v. Wilder* (1975), 85 Wash. 2d 364, 534 P.2d 1355), jurisdictions other than community property States have reached polarized conclusions.

The Colorado courts in *In re Marriage of Ellis* (1975), 36 Colo. App. 234, 538 P.2d 1347, *aff'd, Ellis v. Ellis* (Colo. 1976), 552 P.2d 506, held a military retirement pension was a resource of the husband and not property. The appellate court stated that such pension should be considered both in fixing the amount of maintenance and child support which the husband is able to pay and in determining a just division of the marital property, but not as marital property. The supreme court agreed that military retirement pay is not "property" because it lacks "cash surrender value; loan value; redemption value; lump sum value; and value realizable after death." (552 P.2d 506, 507.) The Arkansas Supreme Court followed *Ellis* in *Fenney v. Fenney* (1976), 259 Ark. 858, 537 S.W.2d 367.

However, a different result was reached in New Jersey. In *Kruger v. Kruger* (1976), 139 N.J. Super. 413, 354 A.2d 340, the superior court found that the holding and reasoning of community property State courts—that retirement pay is awarded in return for services previously rendered and therefore divisible as community property—were persuasive. The court held that a husband's irrevocable life retirement pay constitutes an asset subject to equitable distribution to the extent his pay is based on his military service while married. A dissenting justice believed the military retirement pay was income and not property since the payments are on a monthly basis, terminate on the death of the recipient, and have no lump sum or right of withdrawal.

The New Jersey Supreme Court affirmed in part the lower court in *Kruger v. Kruger* (1977), 73 N.J. 464, 375 A.2d 659, and held that the right to receive monies in the future is an economic resource or asset. The court noted that many employee benefits (such as deferred compensation, stock option, profit sharing, and pensions) are assets subject to equitable distribution. It reasoned that military retirement pay is property since it is comparable to a private pension which is property even though its value could become worthless in the future since the corpus of a trust may dry up or a pension plan may become bankrupt.

After considering the conflicting viewpoints, the Michigan Court of Appeals in *Chisnell v. Chisnell* (1978), 82 Mich. App. 699, 267 N.W.2d 155,

also held that military retirement pay is correctly characterized as a marital asset and included within the property settlement. The court found that the pay is primarily deferred compensation for services rendered prior to retirement.

■■ Likewise, we, too, believe that military retirement pay is "marital property." The pay is not a gratuity, but an earned property right which accrues by reason of the individual's years of military service. (*Berkey v. United States* (Ct. Cl. 1966), 361 F.2d 983; *Marks v. Marks* (Tex. Civ. App. 1971), 470 S.W. 2d 83; *Payne v. Payne* (1973), 82 Wash. 2d 573, 512 P.2d 736.) Although Congress can eliminate the retirement pay system, that contingency should not deny the wife from sharing in the benefits that are earned.

Thus, we find that since the parties were married for 217 months of James' 240 months of military service, Margaret has an interest to be determined by the trial court in 217/240 percent of James' net retirement benefits as a part of the property settlement. However, although a percentage of the military retirement pay is properly payable to the former spouse to the extent it is part of the consideration earned by the military person subsequent to the marriage, since the pay is a personal entitlement payable to the retired member himself as long as he lives, no part of the pay should pass to the former wife's estate should she predecease him. 1968 U.S. Code Cong. & Admin. News 3300; *In re Marriage of Fithian* (1974), 10 Cal. 3d 592, 517 P.2d 449, 111 Cal. Rptr. 369; *Chisnell v. Chisnell.*

Although not raised by the parties in their briefs, given the recent United States Supreme Court decision in *Hisquierdo v. Hisquierdo* (1979), ___ U.S. ___, 59 L. Ed. 2d 1, 99 S. Ct. 802, we deem it advisable to address the question whether the Federal supremacy clause prohibits treating the military retirement pay as marital property. The California Supreme Court in *In re Marriage of Hisquierdo* (1977), 19 Cal. 3d 613, 566 P.2d 224, 139 Cal. Rptr. 590, ruled that the Railroad Retirement Act (45 U.S.C. §231 *et seq.* (1976)) benefits resulting from employment during marriage were community property subject to division in the event of dissolution of marriage. The United States Supreme Court reversed and held that ordering the divorcing husband to pay his former wife a portion of his interest in pension benefits afforded under the Railroad Retirement Act inflicted the kind of injury to the objectives of the Federal program that was forbidden by the supremacy clause. The court stated that the antiattachment provision[1] in the Railroad Retirement Act's statutory

---

[1] "Notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated ° ° °." 45 U.S.C. §231m (1976).

scheme protected Congress' decision (concerning how finite or limited funds were to be allocated) from State court decisions that would reverse the flow of incentives Congress originally intended.

Although it has long been held that military retirement pay is not subject to garnishment or attachment (*Buchanan v. Alexander* (1846), 45 U.S. (4 How.) 20, 11 L. Ed. 857; *Applegate v. Applegate* (E.D. Va. 1941), 39 F. Supp. 887; 6 Am. Jur. 2d *Attachment & Garnishment* §§78, 79 (1963)), there is no provision similar to section 231 in the Railroad Retirement Act precluding attachment of military retirement pay. (H.R. Rep. No. 92-481, 92d Cong., 1st Sess. 17 (1971).) Furthermore, there is no statute prohibiting the assignment of the retirement pay (*cf.* 45 U.S.C. §231 (1976)), nor is there a separate spouse's benefit which is terminated upon absolute divorce. (*Cf.* 45 U.S.C. §231d(c)(3) (1976).) State family law must be overridden only when it would inflict "major damage" to a "clear and substantial" Federal interest. *United States v. Yazell* (1966), 382 U.S. 341, 352, 15 L. Ed. 2d 404, 410, 86 S. Ct. 500, 507.

■■ We find no evidence that the Illinois marital property scheme impermissibly conflicts with the stated objectives of the military retirement pay system. See *In re Marriage of Fithian.*

Reversed and remanded.

GREEN, J., concurs.

Mr. JUSTICE TRAPP, dissenting:

The very terms of the principal opinion contradict the concepts of the Illinois Marriage and Dissolution of Marriage Act, section 503(c) (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)), providing for the division of marital property when it states:

> "[S]ince the pay is a personal entitlement payable to the retired member himself as long as he lives, no part of the pay should pass to the former wife's estate should she predecease him." 70 Ill. App. 3d 706, 709.

That provision is rationally inconsistent and unmanageable, for if upon remand the trial court awarded to the wife a greater share of undisputed marital property to theoretically balance or compensate for the retirement pay anticipated after the dissolution of the marriage, under the language it would become necessary to return the compensating quantum of property so awarded to the husband upon the death of the wife.

If, as the quoted portion of the opinion suggests, it is contemplated that the trial court may order distribution when the husband receives the payments, as was done in *Kruger v. Kruger* (1977), 73 N.J. 464, 375 A.2d

659, we return to a provision for permanent periodic alimony which appears to be contrary to the legislative concept of maintenance as stated in section 504 of the Act.

Section 503(a)(3) (Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(3)) specifically provides that "property" acquired after a judgment of legal separation shall be "non-marital" property. It does not appear to be contended that the husband has any right to installments of retirement pay which have not been received. There is no suggestion of contribution to the retirement pay by either party and no evidence of a contractual right as might be found in some forms of compensation plans. The opinion quotes *Ellis v. Ellis* (Colo. 1976), 552 P.2d 506, in which that supreme court determined that military retirement pay is not property because it lacks "cash surrender value; loan value; redemption value; lump sum value; and value realizable after death."

The opinion cites *Berkey v. United States* (Ct. Cl. 1966), 361 F.2d 983, as authority for stating that military retirement pay is "an earned right." That opinion was solely concerned with retirement pay accumulated and withheld while the veteran was hospitalized as an incompetent, and the statement concerning the "property right" was directed to the issue of the distribution of the accumulated pay following the death of the veteran.

In *Savage v. Savage* (Ind.App. 1978), 374 N.E.2d 536, the trial court purporting to act under the Dissolution of Marriage Act, awarded the wife a portion of monthly pension payments which "does not give a right of lump sum payment," but was limited to periodic payments under a defined plan in which receipt of payments was contingent upon survival of the beneficiary.

The reviewing court found such an award to be in error, saying:
> "[A]n actual award under the property settlement must consist of assets in which the parties have a vested present interest which is sufficient to qualify the asset as marital property." (374 N.E.2d 536, 540.)

That court concluded that the property did not so qualify.

In *Wilcox v. Wilcox* (Ind.App. 1977), 365 N.E.2d 792, the husband had become a tenured professor. The wife contended that his future salary as such a professor until retirement should be discounted to present value and divided as marital property. The Indiana Statute for the division of marital property is substantially similar to the provisions of the Illinois Statute. The court stated:
> "When determining what is to be divided there is nothing in the statute which lends itself to the interpretation that future income is 'property' and therefore divisible. It appears that a vested present interest must exist for the item to come within the ambit of 'marital

assets'. We cannot say that Gerald has a vested present interest in his future earnings and the legislature cannot be said to have considered it as such.

\* \* \*

To allow the discounting of a future stream of income to be called 'property' runs contra to the statutory provisions forbidding maintenance without a showing of incapacitation. Regardless of the label attached to an award above the value of the marital assets, its true nature would shine through as maintenance." 365 N.E.2d 792, 795.

The provisions of section 503(a) and 503(c) of the Act (Ill. Rev. Stat. 1977, ch. 40, pars. 503(a), 503(c)) reflect that the legislature did not intend to create or adopt the concepts of community property. There is no apparent reason why this court should attempt to integrate the case precedents of community property jurisdiction into this Act and in effect, legislate that which the legislature did not do.

I would affirm the trial court.