COLLEEN ANN LINSON, Plaintiff-Appellee, *v.* GERALD JOHN LINSON, Defendant-Appellant

NO. 6875

OCTOBER 21, 1980

HAYASHI, C.J., PADGETT AND BURNS, JJ.

## OPINION OF THE COURT BY BURNS, J.

This is an appeal from a Decree Granting Absolute Divorce and Awarding Child Custody entered in favor of the plaintiff-wife on September 20, 1977.

There is one issue: Whether the trial court erred in ruling that a nonvested federal military retirement benefit which was eighteen-twentieths (18/20) earned but which was worthless until it was twenty-twentieths (20/20) earned was divisible in a divorce action.

The parties married on February 14, 1959. Husband began his air force career on April 20, 1959. The parties separated on April 4, 1977 and wife filed a complaint for divorce on May 5, 1977. At the time of separation and divorce, husband was a technical sergeant, pay grade 36. Upon 20 years service he is entitled (but not required) to retire and to

receive a monthly cash payment (based on his pay grade and length of service) and other benefits for the remainder of his life.

Husband's position with respect to wife's entitlement to his potential retirement benefits is best stated in his following testimony:

HUSBAND: I have not as yet earned the military retirement, and I really disagree that she is entitled to it. If I were to get out of the service with 18 years, I wouldn't have any retirements coming to me. And I just don't see where she has an interest to it.

COURT: Well, as I understand it Sergeant, if you get out at 18 and you get nothing, she gets nothing.

HUSBAND: Yes sir, but her name is not on my enlistment contracts. I was the one who enlisted into the service, not her.

The Decree Granting Absolute Divorce and Awarding Child Custody made the following award:

(f) *Contingent Military Retirement Rights.* Defendant's contingent military retirement rights are a marital asset under Hawaii law. Should Defendant remain in military service for two more years so that his retirement rights mature, Plaintiff's contingent interest in Defendant's military retiremen. shall likewise mature. Plaintiff's entitlement to such pension rights is 18/20 of 50% or 45% of a technical sergeant's pension, together with cost-of-living increases thereon, based upon the amount such a technical sergeant would draw at the time Defendant retires. Upon his retirement, Defendant shall notify his military disbursement officer that a separate allotment check shall be issued to Plaintiff each month in an amount equal to the foregoing pension. These payments shall continue so long as both Plaintiff and Defendant shall live and shall not be eliminated upon Plaintiff's remarriage.

This case squarely presents the issue of whether the nonvested retirement benefits of one spouse constitute part of the "estate of the parties" under Hawaii Revised Statutes (HRS) § 580-47 and are therefore subject to division and distribution

by order of the family court upon granting a divorce.[1] Although our supreme court refers to this issue in *Tavares v. Tavares*, 58 Haw. 541, 544, 574 P.2d 125, 127 (1978), the case at bar is essentially one of first impression in this jurisdiction. For clarity, primarily in analyzing decisions in other jurisdictions, the terms "vested" and "matured", as they relate to retirement benefits in divorce cases, require definition. We adopt those definitions set forth by the Supreme Court of California in *In re Marriage of Brown*, 126 Cal. Rptr. 633, 544 P.2d 561 (1976).

> "* * * Some decisions that discuss pension rights, but do not involve division of marital property, describe a pension right as 'vested' if the employer cannot unilaterally repudiate that right without terminating the employment relationship. * * * In divorce and dissolution cases * * * however, the term 'vested' has acquired a special meaning; it refers to a pension right which is not subject to a condition of forfeiture if the employment relationship terminates before retirement. * * * [T]he term 'vested' in this latter sense [defines] a pension right which survives the discharge or voluntary termination of the employee.
>
> "As so defined, a vested pension right must be distinguished from a 'matured' or unconditional right to immediate payment. Depending upon the provisions of the retirement program, an employee's right may vest after a term of service even though it does not mature until he reaches retirement age and elects to retire. Such vested but immature rights are frequently subject to the condition, among others, that the employee survive until retirement." (Citations omitted.) (Footnotes omitted.)

126 Cal. Rptr. at 635, 544 P.2d at 563.

These definitions create three periods in a retirement benefit plan. Benefits may be nonvested, vested but not mature, or mature. *In the Matter of the Marriage of Lucille*

---

[1] *See generally* Annotation, Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement of Property Rights Between Spouses, 94 ALR 3d 176 (1979).

*Rogers and Ronald A. Rogers,* Ore. App., 609 P.2d 877, 880 (April 14, 1980).

Whether nonvested retirement benefits constitute property subject to division upon divorce is a question which has divided courts in other jurisdictions.

In 1941, the California Supreme Court issued a decision which was to become the leading case for a generation thereafter. In *French v. French,* 17 Cal. 2d. 775, 112 P.2d 235, the court held that nonvested pension rights are not property, but a mere expectancy, and therefore not a community asset subject to division upon dissolution of a marriage. *See also White v. White,* 136 N.J. Super. 552, 347 A.2d 360 (1975), *Lumpkins v. Lumpkins* (Tex. Civ. App.) 519 S.W.2d 491 (1975).

This characterization of nonvested pension rights meant that so long as the dissolution action preceded vesting, the non-employee spouse could not be awarded a share in a most valuable potential asset, an asset acquired through effort expended during the marriage. It meant that the employee spouse could prevent the non-employee spouse from sharing this benefit by timing the dissolution action to occur before vesting. *See, e.g.,* Note, *Retirement Pay: A Divorce in Time Saved Mine,* 24 Hastings L. Rev. 347 (1973).

In 1969, the New Mexico Supreme Court held that vested, nonmature navy retirement pay to which a husband would become entitled on retirement after the divorce was a community property interest subject to division in the divorce proceeding. *LeClert v. LeClert,* 80 N.M. 235, 453 P.2d 755. *See also Copeland v. Copeland,* 91 N.M. 409, 575 P.2d 99 (1978) (affirming the *LeClert* rule).

In 1971, the Washington Intermediate Court of Appeals, in *DeRevere v. DeRevere,* 5 Wash. App. 741, 491 P.2d 249, held that nonvested retirement benefits constitute community property under the laws of that state. *See also Wilder v. Wilder,* 85 Wash.2d 364, 534 P.2d 1355 (1975).

In 1976, the Supreme Court of California, in *Brown, supra,* specifically overruled *French v. French* and held that nonvested retirement benefits were property subject to division in dissolution proceedings. The *Brown* court reasoned

that retirement benefits are not gratuities flowing from the employer's beneficence, but rather part of the consideration earned by the employee, a form of deferred compensation for services rendered. Therefore, "the employee's right to such benefits is a contractual right, derived from the terms of the employment contract". 126 Cal. Rptr. at 637, 544 P.2d at 565. Relying on California cases dealing with pensions, the court stated that "a contractual right is not an expectancy but a chose in action, a form of property". *Id.* The fact that an employee's contractual right to a pension is contingent upon future events "does not degrade that right to an expectancy. The law has long recognized that a contingent future interest is property . . ." 126 Cal. Rptr. at 638, 544 P.2d at 566.

Having judicially redefined the employee spouse's relationship to a nonvested pension, the *Brown* court noted that pension benefits have become in recent times an increasingly significant part of the consideration earned by the employee; that as the date of vesting and retirement approaches, the value of the pension right often becomes the most important asset of the marital community, and that a property division which excludes this asset from consideration is inequitable.

Arizona, Texas, Wisconsin, Illinois and Idaho have followed suit. *Van Loan v. Van Loan*, 116 Ariz. 272, 569 P.2d 214 (1977), *Cearley v. Cearley*, Tex., 544 S.W.2d 661 (1976), *Leighton v. Leighton*, 81 Wis.2d 620, 261 N.W.2d 457 (1978), *In Re Marriage of Hunt*, 78 Ill. App. 3d 653, 397 N.E.2d 511 (1979), *Shill v. Shill*, 100 Idaho 433, 599 P.2d 1004 (1979). Recent decisions to the contrary have come from Arkansas, Colorado and Indiana. *See Fenney v. Fenney*, Ark., 537 S.W.2d 367 (1976), *Ellis v. Ellis*, 191 Colo. 317, 552 P.2d 506 (1976), *Hiscox v. Hiscox*, Ind. App., 385 N.E.2d 1166 (1979). Of these, *Ellis* is typical in approach. In *Ellis*, the husband had already retired (after 29 years of military service, during the last 20 of which the parties had been married) and was receiving retirement pay on a monthly basis. The *Ellis* court held that military retirement pay is not "property" under the applicable Colorado statute (§ 14-10-113, C.R.S. 1973) because "it does not have any of the following elements: cash surrender value; loan value; redemption value; lump sum

value; and value realizable after death". 552 P.2d at 507.

In reading the opinions of courts which have passed on this issue we come to the conclusion that those courts which hold that nonvested retirement benefits are cognizable or divisible do so on the basis of equity, although this is sometime left unsaid. Courts holding that such benefits are not cognizable or divisible, on the other hand, appear not to have considered equity at all, but to have rather mechanically applied rules of property law.

According to HRS § 571-3, "[i]n any case in which it has jurisdiction the [family] court shall exercise general equity powers as authorized by law". HRS § 580-47 provides that "[u]pon granting a divorce, the [family] court may make such further orders as shall appear just and equitable * * * finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint or separate". In Hawaii, the court's power and authority to divide the property of divorcing spouses was granted by Act 77, SLH 1955, amending then RLH § 324-21. The Standing Committee Report (No. 356) of the House of Representatives, where the bill originated, indicates that the Judiciary Committee amended the language of the bill "to make it clear that all property, including choses in action, shall be subject to a property settlement, regardless of the form of the property, or the technical or legal manner in which such property is held". 1955 House Journal, pp. 697-698.

Equity regards substance rather than form. *Lord v. Lord*, 35 Haw. 26 (1939). Whether husband's relationship to prospective retirement benefits is called a "mere expectancy", and therefore not "property" as in *French*, or a "contractual right", and therefore "property" as in *Brown*, the fact is that 18 of the 20 years necessary to qualify for it were years in which the Linsons were partners in marriage. The total value of the Linsons' possessions, except for two cemetery plots of specified value, appears from the record to have been slightly more than $1,000.00. Husband's 20th year in the air force would be completed on February 13, 1979, at the age of 37, after which time he would be entitled to retire and receive

substantial retirement benefits every month for the rest of his life.

We have found no Hawaii case law defining the phrase "estate of the parties" as it is used in HRS § 580-47. In keeping with our legislature's intent, we define it broadly, so as to facilitate and not to impair the court's ability to reach "just and equitable" results as mandated by HRS § 580-47. We hold that the phrase "estate of the parties" as it is used in HRS § 580-47 means anything of present or prospective value, and therefore that a spouse's nonvested military retirement benefit constitutes part of the estate of the parties under HRS § 580-47.

\* \* \* \* \*

This case presents another problem: federal preemption.

In *Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979), the United States Supreme Court, relying on the supremacy clause of the United States Constitution,[2] held that the Railroad Retirement Act (45 U.S.C. § 231 et seq.) precludes a state court in a divorce action from both the division of railroad pensions as property and an offsetting award of an equivalent amount of other property to the non-employee spouse.

The *Hisquierdo* court found congressional intent to preempt a state's right to divide these benefits principally on the basis of two of the Railroad Retirement Act's provisions. First, § 231m of the Railroad Retirement Act:

Notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment attachment, or other

---

[2] Article VI, United States Constitution, provides *inter alia*:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges of every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

legal process under any circumstance whatsoever, nor shall the payment thereof be anticipated. . . .

Second, § 231a(c)(1) of the Railroad Retirement Act specifically provides a separate benefit for spouses that terminates upon absolute divorce. 45 U.S.C. § 231d(c)(3).

The *Hisquierdo* court also found from its study of the Railroad Retirement Act's legislative history that one of its prime purposes was to encourage older workers to retire, thereby assuring more rapid advancement and more jobs for younger workers. 439 U.S. at 573-74. The court felt that allowing states to treat the Railroad Retirement Act's benefits as divisible property would frustrate this congressional objective, in that it would discourage the divorced employee from retiring by reducing benefits received. 439 U.S. at 585.

The court found preemption notwithstanding its statements that "[t]he federal nature of the benefits does not by itself proscribe the entire field of state control", 439 U.S. at 583; that in a supremacy clause analysis "[t]he pertinent questions are whether the right as asserted [under state law] conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition", *id.*; that " the whole subject of the domestic relations of husband and wife . . . belongs to the laws of the States and not to the laws of the United States' ", 439 U.S. at 581 (citation omitted); that the court has "limited review under the Supremacy Clause to a determination whether Congress has 'positively required by direct enactment' that state law be pre-empted", *id.* (citation omitted); that "[a] mere conflict in words is not sufficient. State family and family-property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden." *Id.* (citation omitted).

In our view, the *Hisquierdo* decision is unwarranted and inequitable.

It is inequitable because it deprives the railroad employee's spouse of a share of a valuable asset acquired during the marriage. In cases involving Railroad Retirement Act benefits, *Hisquierdo* makes it impossible for state courts in divorce

cases to divide and distribute the estate of the parties upon a just and equitable basis.

It is unwarranted because neither the statute nor its legislative history "positively requires" preemption. The right asserted under state law does not do "major damage" to "clear and substantial" federal interests. Faced with less than "concrete" legislative materials, the *Hisquierdo* majority relies on a series of inferences to which there are at least equally reasonable alternatives. *See* Mr. Justice Stewart's dissent at 439 U.S. 581.

Notwithstanding our disagreement with *Hisquierdo,* it is the current law of the land with respect to divorce cases dealing with benefits under the Railroad Retirement Act. The issue we must address is whether we are required to come to the same result with respect to military retirement benefits.[3]

Since *Hisquierdo,* the Supreme Courts of Alaska, Arizona, California and Montana have addressed the issue whether federal law precludes states from treating military retirement pay as property subject to division upon dissolution of marriage.[4] *Cose v. Cose,* Alaska, 592 P.2d 1230 (1979), *petition for certiorari filed,* 48 USLW 3627 (U.S. April 1, 1980) (No. 79-1469), *Czarnecki v. Czarnecki,* 123 Ariz. 466, 600 P.2d 1098 (1979), *Milhan v. Milhan,* Sup., 166 Cal. Rptr. 533, 613 P.2d 812 (July 17, 1980) ("Milhan II"), *In Re Marriage of Miller,* Mont., 609 P.2d 1185 (1980), *petition for certiorari filed,* 49 USLW 3136 (September 9, 1980) (No. 80-291). *See also In Re Marriage of Musser,* (Ill. App. 4th Dist.), 388 N.E.2d 1289 (1979), *Gorman v. Gorman,* (Cal. App. 4th Dist., Div. 2), 153 Cal. Rptr. 479 (1979), *In Re Marriage of Milhan,* 13 Cal. 3d 129, *certiorari denied* (1975) 421 U.S. 976 ("Milhan I"), *In Re Marriage of Fithian,* 10 Cal. 3d 592,

---

[3] In this regard, we find no meaningful distinction between the various branches of the armed services.

[4] The United States Supreme Court has postponed further consideration of the question of jurisdiction in *McCarty v. McCarty,* Calif. Ct. App., 1st App. Dist., Div. 4 (February 6, 1980), United States Supreme Court docket number 80-5, to the hearing of the case on the merits. 49 USLW 3289 (October 21, 1980). The lower court found no federal preemption with respect to military retirement pay.

*certiorari denied* (1974) 419 U.S. 825. Except for *Cose, supra,* all of the aforementioned agree that federal law has not preempted a state's right to classify military retirement pay as property subject to division.

As the *Milhan II* decision persuasively demonstrates, the principles which the *Hisquierdo* court used to find preemption with respect to Railroad Retirement Act benefits yield a different result when applied to the military retirement statutory scheme.

FIRST: The legislative history of the Railroad Retirement Act indicated that Congress provided benefits to encourage employees to retire, and that this objective would be frustrated by allowing states to treat the benefits as property because it would discourage a divorced employee from retiring. In contrast, one important basis for the provision of military retirement pay was to provide servicemen with an incentive to remain in the armed forces. *Milhan II, supra,* citing *Fithian, supra.*

SECOND: No federal statute similar to § 231m of the Railroad Retirement Act shields military retirement pay from assignment, attachment, garnishment, taxation, other legal process and anticipation. *See Milhan II,* 166 Cal. Rptr. at 537, n. 9, 613 P.2d at 816, n. 9, and *Fithian, supra.*

THIRD: Unlike the Railroad Retirement Act, the military retirement scheme does not contain a provision for a separate benefit for spouses[5] terminating upon divorce.

Instead, the scheme contains two different annuity plans, the Retired Serviceman's Family Protection Plan (10 U.S.C. § 1431 et seq.), and the Survivor Benefit Plan (10 U.S.C. § 1447 et seq.). The serviceman may elect not to participate in either plan. (10 U.S.C. §§ 1431(b), 1448(a)). Both plans allow the serviceman to designate the surviving children as the beneficiaries, instead of the spouse. (10 U.S.C. §§ 1434(a), 1450(a).) Unlike the railroad retirement scheme, these annuities are not payable until

---

[5] The *Hisquierdo* court stated that "[d]ifferent considerations might well apply where Congress has remained silent on the subject of benefits for spouses . . ." 439 U.S. at 590, n. 24.

the serviceman's death. Nor is a surviving spouse's annuity absolutely cut off even upon remarriage. The spouse may continue receiving an annuity if the remarriage occurs after the spouse reaches age 60. (10 U.S.C. §§ 1434(a), 1450(b).) If a remarriage entered into prior to age 60 is dissolved, the spouse may resume receiving an annuity due under the Survivor Benefit Plan. (10 U.S.C. § 1450(b).)

Both the structure and the legislative history of the annuity plans available for military spouses indicate that they were designed to alleviate hardship caused by the serviceman's death. (See 1972 U.S. Code Cong. & Admin. News, at pp. 3288-3328.) Thus in contrast to the Railroad Retirement System, Congress did not enact a spousal benefit designed to reflect the contribution of military spouses to the marital community. Accordingly, there is no basis for inferring a congressional intent to cut off the California community property rights of military spouses. As stated in Fithian, supra, 10 Cal. 3d at page 600, "Congress' concern for the welfare of soldiers' widows sheds little light on Congress' attitude toward the community treatment of retirement benefits, particularly since those benefits do not survive the serviceman regardless of his marital status at death.''

*Milhan II, supra*, 166 Cal. Rptr. at 537-38, 613 P.2d at 816-17 (footnote omitted). *See also Fithian, supra.*

The *Cose* court's analysis of congressional intent and legislative history is, *in toto*, as follows:

Some clues as to Congressional intent can be gathered from the statutes and pertinent background materials. Although the statutes are silent as to rights of dependents of the retiree, they do include a method by which the serviceman can use a portion of his retired pay to purchase an annuity for his widow. 10 U.S.C. §§ 1447-1455. Under this plan only a widow, not a surviving ex-wife, is eligible for benefits. Moreover, when the wife can no longer be a beneficiary because of divorce, deductions from retired pay cease. 10 U.S.C. § 1434(c). In the passage of the law setting up this plan, provisions which

would have protected ex-wives were stricken from the law before its passage. 118 Cong. Rec.S. 29810-12 (1972). In this respect Congress purposefully excluded ex-wives from benefitting under the plan. One searches the statutes in vain for any indication that Congress has ever treated retired pay as property or has intended retired pay to be divisible upon divorce.

592 P.2d at 1232 (footnote omitted).

The above analysis ignores the facts that the annuity plan established by 10 U.S.C. § 1447 *et seq.* is *voluntary* on the part of the serviceman (*see* 10 U.S.C. § 1448(a) ) and is only one of two voluntary annuities available, *see* 10 U.S.C. § 1431 *et seq.* and § 1431(b); and that the annuity plan is not the primary retirement benefit, but rather a supplemental program. To conclude that Congress's purposeful exclusion of ex-wives from a voluntary supplemental annuity plan is enough to satisfy the requirement that federal law positively require that a state be precluded from acting with respect to the primary retirement benefit is, as a logical proposition, more than a little puzzling. To do so in the absence of any provision similar to § 231m of the Railroad Retirement Act suggests a decision so result-oriented that it leaves reason behind. If *Hisquierdo* in effect lightened the burden on those claiming preemption, then *Cose* appears either to have dispensed with it altogether or in fact to have reversed it.

We hold that federal law does not bar Hawaii family courts from considering and dividing husband's nonvested military retirement benefits as part of the estate of the parties under HRS § 580-47.

We question, however, the portion of paragraph (f) of the decree which provides:

(f) . . . Upon his retirement, Defendant shall notify his military disbursement officer that a separate allotment check shall be issued to Plaintiff each month in an amount equal to the foregoing pension . . .

Both counsel agreed at oral argument that under current air force regulations husband will be unable to cause a monthly allotment check to issue for such a purpose. In

addition, the use of the phrase "the foregoing pension" is misleading.

Therefore we strike the sentence and remand this case to the lower court for determination of the manner and method in which wife is to be paid her share of the military retirement benefits.

In all other respects the lower court's decision is affirmed.

*Blake T. Okimoto (Max Nakata Garcia* on the brief) for defendant-appellant.

*Dorothy N. W. Lamott* for plaintiff-appellee.