**David A. RUHL, Petitioner,**

v.

**RAILROAD RETIREMENT BOARD,**
**Respondent.**

**No. 14744.**

United States Court of Appeals
Seventh Circuit.

Feb. 24, 1965.

Rehearing Denied April 5, 1965.

Harry A. Carlson, Hugh M. Matchett, Chicago, Ill., for petitioner.

Louis Turner, Chicago, Ill., Myles F. Gibbons, Gen. Counsel, David B. Schreiber, Assoc. Gen. Counsel, Railroad Retirement Bd., Dale G. Zimmerman, Chicago, Ill., Railroad Retirement Bd., of counsel, for respondent.

Before CASTLE, Acting Chief Judge, SCHNACKENBERG and SWYGERT, Circuit Judges.

CASTLE, Acting Chief Judge.

This matter is before the Court upon the petition of David A. Ruhl to review and set aside a decision of the Railroad Retirement Board denying petitioner's application for an annuity under the Railroad Retirement Act of 1937 (45 U.S.C.A. §§ 228a–228z–1).[1] Jurisdiction is predicated upon 45 U.S.C.A. § 228k which incorporates the judicial review provisions of 45 U.S.C.A. § 355(f).

The Board determined petitioner last worked for a railroad in March 1948 and that he has been employed by the United States since 1953. The Board concluded that petitioner was not entitled to an annuity under the Act until he ceased to render compensated service for the government and relinquished all his rights to return to such employment.

The Board bases its decision on the application of Section 2(a) and (b) of the Act (45 U.S.C.A. § 228b(a) and (b) which provide,[2] respectively, that an individual must cease compensated service to "any person", whether or not an "employer" as defined in the Act, before he is eligible for an annuity, and that he must relinquish all rights to return to the service of an "employer" and of the "person" by whom he was last employed in order to receive payment of the annuity.

Petitioner filed his application for an annuity on January 29, 1962. At that time he was employed by the United States Army Ordnance Corps. By a change effected through an internal reorganization of the Department of the Army he ceased working for the United States Army Ordnance Corps on July 31, 1962 and commenced working for the United States Army Munitions Command on August 1, 1962. The employment was at the same location and involved similar work. The application was denied August 20, 1962.[3]

Petitioner asserts the Board erred in denying his application for an annuity. The contentions he advances in this connection precipitate the following contested issues:

(1) Is the United States a "person" within the meaning of Section 2(a) and (b) of the Act?

(2) Does petitioner's current employment in the United States Army Munitions Command constitute employment by a "person" different

---

1. Referred to herein as the "Act".

2. These sections provide, in pertinent part, as follows:

"(a) The following-described individuals, if they shall have been employees on or after the enactment date, and shall have completed ten years of service, shall, subject to the conditions set forth in subsections (b)–(d) of this section, be eligible for annuities after they shall have ceased to render compensated service to any person, whether or not an employer as defined in section 228a(a) of this title (but with the right to engage in other employment to the extent not prohibited by subsection (d) of this section): * * *"

"(b) An annuity shall be paid only if the applicant shall have relinquished such rights as he may have to return to the service of an employer and of the person by whom he was last employed; * * *"

3. An appeal to the Appeals Council of the Railroad Retirement Board followed. The adverse decision of the Appeals Council was appealed to the Board which affirmed the decision of the Appeals Council on July 31, 1964.

from the United States Army Ordnance Corps, and does the termination of his services with the latter agency satisfy the requirements of Section 2(a) and (b) of the Act? (3) Whether the provisions of Section 2 of the Act which require as a condition to payment of an annuity that an individual cease compensated service for "persons" other than "employers" covered under the Act are unconstitutional as violative of the due process clause of the Fifth Amendment to the Constitution of the United States.

◼ Section 1(n) of the Act (45 U.S.C.A. § 228a(n)) defines the term "person" for the purposes of the sections here involved as meaning "an individual, a partnership, an association, a joint-stock company, or a corporation." Whether the word "person" or "corporation" includes the United States depends upon the connection in which the word is found. State of Ohio v. Helvering, 292 U.S. 360, 370, 54 S.Ct. 725, 78 L.Ed. 1307. In State of Georgia v. Evans, 316 U.S. 159, (p. 161), 62 S.Ct. 972, 86 L.Ed. 1346, the Court in holding the State of Georgia is a "person" within the meaning of that term as defined in the Sherman Act, and was entitled to sue for treble damages thereunder, pointed out "[w]hether the word 'person' or 'corporation' includes a State or the United States depends upon its legislative environment." The Court distinguished its holding in United States v. Cooper Corporation, 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071, relied upon by petitioner in the instant matter, and observed that the interpretation in Cooper "was drawn from the structure of the Act, its legislative history, the practice under it, and past judicial expressions." The Court observed that Cooper did not hold that the word "person", abstractly considered, could not include a governmental body, but on the contrary recognized there is no hard and fast rule of exclusion, and factors such as purpose and legislative history of the statute may indicate an intent, by use of the term, to bring state or nation within the scope of the law.

◼ In United States v. State of California, 297 U.S. 175, 186, 56 S.Ct. 421, 80 L.Ed. 567, where it was held a state owned and operated railroad was a common carrier engaged in interstate commerce subject to the Federal Safety Appliance Act, it was stated that the canon of construction that a sovereign is presumptively not intended to be bound by its own statute unless named in it is a presumption in aid to consistent construction of statutes of the enacting sovereign when their purpose is in doubt but does not require that the aim of a statute fairly to be inferred be disregarded because not explicitly stated, and that objectives which are plain are not to be thwarted by resort to a rule of construction whose purpose is but to resolve doubts, and whose application in the circumstances would be highly artificial.

◼ The legislative history of Section 2 of the Act as evidenced by the Hearing before the Committee on Interstate and Foreign Commerce, House of Representatives, 75th Cong., 1st Sess., on H.R. 6956, pp. 15–16, 42–44, 75 and 96, and as appraised in United States v. Bush, 3 Cir., 255 F.2d 791, discloses the purpose of the Act was to spread employment through the retirement of superannuated employees; but also to make possible more generous benefits than otherwise could be provided from the limited resources available, by confining participation in benefits to those who had completely retired from the labor market, subject, however, to the countervailing consideration that some supplementation of retirement income through post-retirement employment might be desirable if the annuitant could find such employment from sources other than the person by whom he was employed at the accrual of his annuity.

The petitioner asserts that in the enactment of Section 2 of the Act it was a purpose and intent of Congress to force railroad personnel to defer their retire-

ment as long as possible by making it difficult to find other employment in or out of the railroad industry to supplement their retirement income with the result there would be an increase in the number of other jobs available for unemployed people as well as a conservation of the retirement fund.

■■■ The legislative purpose embodied in Section 2 of the Act convinces us Congress could not have intended to exclude employment by governmental bodies, including the United States, from the scope of employments which must be terminated with no right to return thereto before eligibility for an annuity is established and its payment may commence. Such governmental employments constitute too large a segment of the labor market to permit inference of any Congressional intent to exclude them. Realization of the purpose of Sections 2 (a) and (b) would be substantially impaired by such an exclusion. We are therefore of the opinion that in keeping with the rationale of the decisions of the Supreme Court of the United States to which we have referred, and in consonance with the application of those principles as reflected by the conclusion reached in Burke v. Railroad Retirement Board, 83 U.S.App.D.C. 40, 165 F.2d 24, the United States is a "person" within the meaning of Sections 2(a) and (b) of the Act.

And such conclusion is not at variance with United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884, relied upon by petitioner. No impairment of a sovereign right of the United States results therefrom. On the contrary a policy and objective of the United States is carried out.

■■■ We perceive no merit in the petitioner's contention that his current employment with the United States Army Munitions Command is an employment by an employer other than was his employer in his preceding employment with the United States Army Ordnance Corps. It is obvious that in both cases the United States was and is his employer. The termination of his services with the Ordnance Corps did not satisfy the requirements of Sections 2(a) and (b). He remained in the employ of the United States in the Munitions Command. He did not change employers.

■■■ Petitioner assails the constitutionality of Section 2 of the Act on the ground its provisions violate due process. He contends the requirements of the Section are arbitrary and unreasonable, deprive him of vested property rights and of the liberty of contract without due process, and impair a contractual obligation. From the arguments petitioner advances in support of these contentions it appears he predicates all of them on a concept that his right to benefits is contractual in nature. In this connection he points to the observation made in Scott v. Railroad Retirement Board, 7 Cir., 227 F.2d 684, 686, that the annuities under the Act "are paid from a fund to which the employees and the railroads have contributed equally on all salaries of employees earned after December 31, 1936" and "[t]he fund is set up on an actuarial basis". But those factors are not determinative of the nature of the right to benefits, and participation in the retirement system is compulsory, a condition of employment, not optional, and the rights involved are statutory, not contractual in nature. Moreover, the cessation of service provisions of Section 2 which are the subject of petitioner's complaint have been a part of the Act since its enactment in 1937. No previously vested right was disturbed by the provisions. The justification for those provisions is set forth in United States v. Bush, supra. They have a reasonable basis in the light of the problems to be remedied and the purpose and object of the legislation. They do not unreasonably or arbitrarily discriminate and thereby offend the requirements of due process.

The decision of the Railroad Retirement Board is affirmed.

Affirmed.