161 N.J. Super. 119 (1978)
390 A.2d 1220
CAROL HIPSLEY, PLAINTIFF,
v.
GEORGE HIPSLEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided July 13, 1978.
*120 Mr. Ralph E. McKay for plaintiff.
Mr. Sheldon R. Franklin for defendant (Messrs. Spitzer, Franklin & Keck, attorneys).
HAVEY, J.C.C. (temporarily assigned).
The narrow issue raised in this divorce action is whether the wife is entitled to equitable distribution of her husband's interest in a pension *121 fund under the Federal Railroad Retirement Pension Act, into which the husband made contributions throughout the course of the marriage.
Because of the execution of a property settlement agreement during the prior separate maintenance action, the court must also concern itself with whether the wife's right, if any, is barred by the terms of that written agreement.
The parties were married on January 7, 1968. Prior to and throughout the marriage the husband worked as a railroad employee, having begun his employment in 1963. Monies were deducted from his pay and contributed to a pension fund created by the Railroad Retirement Act of 1937, as amended, 45 U.S.C.A. § 228a et seq. It was agreed that during the marriage over $6,000 was contributed by the husband to the fund through deductions from his pay. It is also clear that 8/13ths of the time he participated in the fund the parties' marriage was still viable and alive. The parties stipulated that if the husband had left his employment as of the date of the filing of the complaint for divorce in 1977, he would be entitled to $550.52 a month upon his retirement.
Sometime prior to September 1976 the marriage began to fail and as a result plaintiff wife commenced a separate maintenance action. On October 29, 1976 an amended judgment for separate maintenance was entered. As part of the amended judgment the parties incorporated a written property settlement agreement dated December 2, 1975, as amended January 12, 1976. The agreement sets forth the terms of support for the infant children of the marriage and disposes of all personal property, automobiles, boats, furnishings and life insurance. The agreement specifically provides a means of disposition of the marital home. Nowhere in the agreement is there mentioned an existing pension fund. Plaintiff seeks a distribution of the husband's interest in the railroad retirement pension fund, arguing that it is "property" under N.J.S.A. 2A:34-23. The husband resists this *122 effort, arguing that the pension fund is not "property" subject to equitable distribution and that even if it were, the wife gave up her right to this asset by the terms of the written property settlement agreement. It is to this contention that the court will address itself first.

I

Does the written property settlement agreement entered into between the parties in this matter bar plaintiff's right to equitable distribution of a pension fund under the Railroad Retirement Act?
Since adoption on September 13, 1971 of the amendments to our Divorce Act, the courts have been perplexed over the extent to which a property settlement agreement should bar a party's right to equitable distribution under N.J.S.A. 2A:34-23. As a contract between husband and wife such a property settlement agreement is unenforceable at law. N.J.S.A. 37:2-5; Bendler v. Bendler, 3 N.J. 161 (1949). Such a contract may, however, be enforceable in equity if found to be fair and equitable. Wolff v. Wolff, 134 N.J. Eq. 8 (Ch. 1943). In Smith v. Smith, 72 N.J. 350 (1977), the Supreme Court dictated the terms under which equitable distribution may be barred by agreement.
We now hold that where equitable distribution is sought pursuant to N.J.S.A. 2A:34-23, an earlier separation agreement will be a bar to such relief only if, and to the extent that, it can qualify as a property settlement, and can likewise be shown to have been fair and equitable. Only then can it be said to be the substantial equivalent of an equitable distribution of marital assets, sufficient to justify denial of such relief.
We readily concede that in many cases this distinction will be difficult of application. Many separation agreements contain both elements of support and of property settlement; provisions touching one or other of these categories can, however, generally be rather easily identified. [at 358]
This holding places the burden upon the one who seeks to bar the statutory right of equitable distribution by *123 reliance upon a contract to satisfy the court that the contract is fair and equitable. Accordingly, if a husband wishes to rely upon such a contract to bar his wife's right to a substantial marital asset such as a pension fund, he has the burden of specifically providing in the contract that the parties had contemplated that asset, and proving to the court that the contract establishes a fair method of disposition of the asset. In order to carry this out good practice would dictate a schedule of substantial assets being attached to the agreement, so there is no question as to what was contemplated. The husband argues that his wife waived any right to the pension fund by paragraph 10 of the agreement which reads as follows:
The parties agreed that each shall be the sole owner of any and all other assets presently in their respective names.
It is settled law that the scope of a release is determined by the intent of the parties and that, in general, claims arising after the date of delivery of the instrument are not covered by it unless explicitly mentioned, since they would not appear to have been within the contemplation of the parties. Bilotti v. Accurate Forming Corp., 39 N.J. 184 (1963).
In Smith v. Smith, supra, the court held that the legislative purpose of affording a means of effecting an equitable distribution of marital assets should receive strong judicial support. Testing the agreement by this standard, the court held that the agreement was nothing more than a support agreement and had none of the characteristics of a property settlement agreement. Applying this standard of strong judicial support to the right of equitable distribution, this court holds that such general language in an agreement granting the parties ownership of "all other assets" presently in their respective names, should not have the force and effect of barring a statutory right. The record in this matter clearly indicates that the parties never considered the husband's *124 pension plan in reaching the terms of the agreement. Whether a pension fund should be included as a marital asset is a complex question requiring the matrimonial bar to analyze with care the employment status of each party in a particular case.
In Pellegrino v. Pellegrino, 134 N.J. Super. 512 (App. Div. 1975), a husband's contribution to a pension plan prior to his retirement was subject to equitable distribution. Our courts have held pensions to be appropriate items for equitable distribution where a vested right was found in a pension accruing during marriage, Blitt v. Blitt, 139 N.J. Super. 213 (Ch. 1976), and where husband had control of the method of enjoying the fund, apart from considerations of vesting, McGrew v. McGrew, 151 N.J. Super. 515 (App. Div. 1977). In Kruger v. Kruger, 73 N.J. 464 (1977), the Supreme Court held that military retirement pay was subject to equitable distribution. This case law makes it apparent that careful discovery in the preparation of a case is essential to establish such necessary facts as (a) the name of the pension fund; (b) the date the party enrolled into the plan; (c) any contribution made, setting forth the method of contribution; (d) the terms of the fund regarding whether it vests  but see Stern v. Stern, 66 N.J. 340 (1975); (e) to what date payments will be deferred, and (f) any facts and terms of the plan indicating the party's control over the disposition of the fund; see McGrew v. McGrew, supra.
Since no discovery was obtained during the original separate maintenance action, the parties failed to capture this asset within the terms of the written agreement. Whether this court ultimately determines that this plan is or is not property subject to equitable distribution, it is clear that the contract should not bar the wife's claim that she should share part of the fund. As the parties did not recognize this substantial asset in the terms of the agreement, the wife's claim under N.J.S.A. 2A:34-23 is not barred by the terms of the written agreement.

*125 II

Is a pension fund created under the Railroad Retirement Act subject to equitable distribution?
The Railroad Retirement Act, 45 U.S.C.A. § 228j(a), provides for the creation of a railroad retirement board which acts as an independent agent of the Executive Branch of the Federal Government. The benefits provided railroad employees under the Railroad Retirement Act replace those provided employees in other industries under the Social Security Act, since railroad employment is not covered under the latter act. The pension created under the Railroad Retirement Act has many similarities to the military retirement pay dealt with in Kruger v. Kruger, 73 N.J. 464 (1977). The court in Kruger noted that based upon the vesting standards of the military retirement pay statute, the pension was "property" subject to equitable distribution. These same vesting standards apply to the railroad retirement fund. See 29 U.S.C.A. § 1053 (1975). Both plans are nonforfeitable, as defined by 29 U.S.C.A. § 1002 (19) (1975). Both are exempt from levy, execution and garnishment by creditors. Compare 38 U.S.C.A. § 3101 with 45 U.S.C.A. § 231m. The similarities between railroad retirement pay and military retirement pay end here.
Military retirement pay was found to be equivalent to other public employees statutory benefits earned because of years of service, Kruger v. Kruger, supra. It was held to be analogous to the contractual rights of a retired employee under a private plan. The Supreme Court stated:
* * * Once all eligibility requirements have been met, the interest in the pension has been fixed and is property subject to equitable distribution. Therefore, the full amount of the monthly retirement pay should be considered as property acquired during the marriage. [73 N.J. at 471]
*126 Military retirement allowance is subject to federal income tax, 26 U.S.C.A. § 61(a) (11) (1967). In contrast, contributions made by a railroad employee to the railroad retirement fund are designated as special income taxes levied on income and not taxable upon receipt. 26 U.S.C.A. § 3201 et seq. Benefits granted under the Railroad Retirement Act are direct and independent rights granted by federal law and are not contractual in nature. Cf. Ruhl v. Railroad Retirement Bd., 342 F.2d 662 (7 Cir.1965).
An analysis of the history of the Railroad Retirement Act indicates that it was adopted to provide railroad employees with benefits apart from those provided employees in other industries under the Social Security Act, 42 U.S.C.A. § 301, since railroad employment is not, generally speaking, governed under the latter act. See 45 U.S.C.A. § 228a et seq.
The legislative history of both the Social Security Act and the Railroad Retirement Act indicates a progressive coordination in their benefits and financing. Sections 18 and 19 of the Railroad Retirement Act, 45 U.S.C.A. 231q and 231r (1974), provide for automatic adjustments in the eligibility requirements for certain railroad retirement benefits whenever amendments to the Social Security Act become effective after December 31, 1974. The tax rate paid by employees for railroad retirement purposes under the Railroad Act is by the express provisions of § 19 made identical to the rate imposed on individuals for Social Security purposes under the Federal Insurance Contribution Act. Compare 26 U.S.C.A. § 3201 with 26 U.S.C.A. § 3101. As a result the amount deducted from defendant's pay has been since 1974 and will continue to be identical with the amount that would be deducted if he were an employee having deductions taken out for Social Security insurance. His disability and retirement benefits will be identical. Any further rate adjustments in social security tax will automatically result in comparable adjustments to railroad retirement deductions or benefits. Lastly, and of most importance, his benefits upon *127 retirement will take the place of, and not supplement, social security benefits. Defendant husband's benefits under the railroad retirement plan should no more be subject to equitable distribution than a comparable employee's right to social security upon his retirement.
Our courts have not extended the concept of equitable distribution to the sharing of Social Security benefits. These rights are created by virtue of the welfare clause of the United States Constitution, Art. I, § 8, cl. 1. The Social Security Act was passed to meet the needs of the aged and poor resulting from lack of work or disabilities of age. Helvering v. Davis, 301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307 (1937). The primary objective of the act was to provide workers and their families with basic protection against hardships created by loss of earnings due to illness or old age. Matter of Vary's Estate, 65 Mich. App. 447, 237 N.W.2d 498 (Ct. App. 1975), aff'd 401 Mich. 340, 258 N.W.2d (Sup. Ct. 1975). The underlying purpose of the amendment of January 1976 to 42 U.S.C.A. § 401 in the creation of a Federal Disability Insurance Trust Fund was to protect Social Security beneficiaries from some of the hardships of existence. Mathews v. deCastro, 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976).
The result of permitting plaintiff wife to share in the benefits of husband under this plan would be supplementing the wife's eventual Social Security retirement benefits with a portion of the husband's railroad retirement benefits. Since he will not be entitled to any Social Security at the time of his retirement, his only source of income would be that portion of the railroad retirement plan remaining after wife's share is taken out.
The court is not unmindful of the California decision of Hisquierdo v. Hisquierdo, 19 Cal.3d 613, 139 Cal. Rptr. 590, 566 P.2d 224 (Sup. Ct. 1977). In that case the California Supreme Court held that such a railroad retirement plan is subject to community property distribution. Plaintiff analogizes *128 community property distribution with the equitable distribution laws of our State. The California court in Hisquierdo, however, did not address itself to the similarities of the Railroad Retirement Act to the Social Security Act, nor did it consider the ultimate inequitable result upon retirement of the husband. The United States Supreme Court has granted certiorari in Hisquierdo because of the significant public policy question raised. 435 U.S. 994, 98 S.Ct. 1644, 56 L.Ed.2d 82 (1978).
Accordingly, this court holds that husband's pension rights under the Railroad Retirement Act are not subject to equitable distribution. The court grants dual divorces to plaintiff and defendant on the grounds of eighteen months' separation.