See also 152 B.R. 840.

**In re THOMSON McKINNON SECURITIES INC.; Thomson McKinnon Inc.; and Realty International Corporation, Debtors.**

**THOMSON McKINNON INC., and Thomson McKinnon Inc., Plaintiffs,**

**v.**

**AUTOMATIC DATA PROCESSING FINANCIAL INFORMATION SERVICES, INC., Defendant.**

**Bankruptcy Nos. 90 B 10914, 90 B 11805 and 91 B 13820. Adv. No. 92 5155A.**

United States Bankruptcy Court, S.D. New York.

March 11, 1993.

Debevoise & Plimpton, New York City, for Thomson McKinnon, et al.

Varet Marcus & Fink P.C., New York City, for Automatic Data Processing Financial Information Services, Inc.

## DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Automatic Data Processing Financial Information Services, Inc. ("ADP") has moved under Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Procedure 7056 for partial summary judgment as to Thomson McKinnon Securities, Inc. ("TMSI") and Thomson McKinnon, Inc.'s ("TMI") objection to its three proofs of claim and their amended complaint for turnover of funds allegedly owed by ADP.[1] In support of its motion, ADP asserts that there are no material facts in issue. ADP argues that, as a matter of law, the debtors' objections to its claims must be dismissed. ADP alleges that the claims arise from a series of contracts that it entered into with the debtors. Accordingly, ADP argues this court can resolve the debtors' objections to ADP's claims on summary judgment by examining the documents and affidavits submitted with the motion. Similarly, ADP contends that the court should dismiss on summary judgment, the debtors' turnover proceeding, which is based upon ADP's breach of a purchase agreement and a data processing agreement that ADP entered into with the debtors. ADP alleges that it is clear from the documents submitted that the debtors have released it from any contractual obligations under the pur-

---

1. ADP has moved for summary judgment as to all of the debtors' objections to its claims except for its claim to be reimbursed for expenses incurred in the removal of certain computers and for various accounts receivable.

chase agreement and that ADP has satisfied all of its obligations under the data processing agreement.

The debtors resist ADP's motion and argue that summary judgment is inappropriate in this case because there are material facts in issue. With respect to their action against ADP, the debtors assert that it did not release ADP from claims arising from certain alleged breaches of the purchase agreement. The debtors also contend that they are entitled to recover funds from ADP because ADP overcharged them under the data processing agreement. The debtors assert that there are facts and circumstances outside of the written agreements which support their turnover action. Similarly, with regard to the objections to ADP's claims, the debtors assert that there are facts, outside of the written agreements between the parties, which support its position.

## FACTUAL BACKGROUND

TMI and TMSI have filed voluntary petitions in this court for reorganizational relief under Chapter 11 of the United States Bankruptcy Code in 1990. TMSI was a securities broker that was in the business of trading securities on its own account and on behalf of customers. TMI is TMSI's parent corporation. The debtors are Delaware corporations with their principal places of business in New York City. Both entities have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

ADP is a Delaware corporation with its principal place of business in East Rutherford, New Jersey. ADP is in the business of providing data processing and related services. ADP filed three proofs of claim against both TMSI and TMI totalling $27,978,191.02. TMSI and TMI object to these claims pursuant to 11 U.S.C. § 502(b)(1). ADP's claims arise from a series of agreements that it entered into with the debtors. The debtors have also commenced an adversary proceeding against ADP seeking turnover of funds based upon ADP's alleged breach of these agreements.

*Purchase Agreement*

On December 1, 1988, the parties executed two separate contracts, a purchase agreement ("Purchase Agreement") and a services agreement ("Services Agreement") with a related letter agreement ("Letter Agreement"). Pursuant to the Purchase Agreement, TMSI and TMI sold their internal data processing and communication services to ADP. The assets sold by the debtors included various contracts, leases and licenses. The purchase price was $20.5 million. In accordance with the Purchase Agreement, ADP paid $12 million in cash and gave an $8.5 million note ("Note") for the balance. The Note provided that ADP could set off any amounts due to ADP from TMSI or TMI. The parties agreed that New York law would govern disputes relating to the Purchase Agreement.

As additional consideration for the assets, ADP assumed certain obligations of the debtors. These obligations are listed in a schedule annexed to the Purchase Agreement. The Purchase Agreement limited ADP's assumption to those obligations which were properly assignable and to those obligations which the debtors could assign without breaching any representation, warranty, or covenant made by the debtors. With respect to those contracts and obligations which were not assignable without the consent of other interested parties, the Purchase Agreement required the debtors to request the necessary consents. The debtors were obligated by the agreement to deliver to ADP a letter from an officer of TMSI detailing the manner and date that each request was made and reporting the status of each request. ADP agreed to indemnify the debtors from "any and all debts, obligations, liabilities or expenses incurred or arising out of any actions or omissions of ADP subsequent to the Closing Date with respect to the Business, or with respect to the Assumed Liabilities...." *Purchase Agreement*, ¶ 10.-1(b)(ii). The indemnity provision did not cover the initial $50,000.00 of obligations and had certain time limits not relevant to this proceeding.

The debtors were required to perform the conditions of the Purchase Agreement in all material respects. The Purchase Agreement gave ADP the right to waive, in writing, the performance of any condition, including the procurement of the requisite consents, without releasing the debtors from liability. Upon such waiver, ADP could proceed with the transaction.

At the closing, the debtors were required to present to ADP any assignments and consents and other instruments necessary to consummate the sale of its data processing assets to ADP. The Purchase Agreement provided that a failure or delay by any party to enforce any right or covenant of the agreement shall not constitute a waiver of the breach of any such covenant or condition.

The parties closed the transaction. However, the debtors had not procured several consents necessary for the assignment of certain leases. The debtors also failed to deliver to ADP the letter apprising ADP of the requests for consent made and the status of those requests. ADP did not waive these conditions in writing.

The debtors commenced this adversary proceeding against ADP seeking turnover of funds allegedly owed by ADP to TMSI from ADP's alleged breach of contract. The debtors assert that ADP breached the Purchase Agreement because it did not fulfill its obligations under the leases it assumed and it failed to indemnify the debtors in connection with the assumed liabilities as required by the agreement.

The debtors argue that on account of ADP's failure to meet various obligations under the assumed leases and its failure to indemnify the debtors with respect to certain liabilities, in derogation of the Purchase Agreement, claims aggregating $2,184,374.50 were filed against TMSI. TMSI settled many of the claims for $454,718.41. The remaining claims against the debtors total $265,549.34. Accordingly, the debtors assert that ADP is liable to them for approximately $720,275.75, representing the cost of settling the claims with third parties and the claims filed by third parties still pending. The debtors contend that they are entitled to recover from ADP the amounts due these third parties, as well as the amounts paid to settle claims, or to set off this amount against any claim that ADP may have against TMSI.

ADP argues that it is not liable for any damages to the debtors arising from the Purchase Agreement because the debtors released it from liability and has moved for summary judgment dismissing the claims against it based upon this agreement. In support of its motion, ADP asserts that there are no factual issues in dispute. ADP argues that the claims that the debtors are now asserting against it have been extinguished by a release ("General Release"), which was executed subsequent to the Purchase Agreement. ADP contends that it is clear from the documents submitted with its motion that ADP has been released from the debtors' claims relating to the Purchase Agreement. The debtors oppose ADP's motion and allege that the General Release did not release ADP from all of its obligations under the Purchase Agreement.

### The Services Agreements

On December 1, 1988, the debtors and ADP also entered into three agreements, the Services Agreement and a master services agreement ("Master Services Agreement"), (collectively, "Master Agreements"), and the Letter Agreement. In the Master Agreements, ADP and the debtors agreed that ADP would supply TMSI with the data processing and communications services that the debtor had previously handled for itself. In the Letter Agreement, TMSI agreed to purchase the services from ADP for ten years at various rates set forth in the document.

The Letter Agreement provided that TMSI would purchase at least $38 million of services during the first three years of the contract and comparable amounts thereafter. TMI guaranteed TMSI's obligations under the contract. The parties stipulated that New Jersey law would govern the Letter Agreement. The Letter Agreement contained a liquidated damages provision which required TMSI to pay to

ADP $27,400,000.00 if TMSI stopped purchasing services from ADP during the first year of the ten year contract period. The amount of liquidated damages for which TMSI would be liable was scaled down if the services were terminated in later years. If the liquidated damages provision was triggered prior to April 30, 1990, the debtors would be liable for other amounts referred to in the Services Agreement as "Additional Discount."

TMSI sold its retail division to Prudential–Bache ("Prudential") in the summer of 1989. After the sale, TMSI no longer needed the extensive data processing services that it had agreed to purchase from ADP. The sale to Prudential triggered the liquidated damages provision in the Letter Agreement. ADP notified TMSI that, as a result of the sale to Prudential, it was entitled to liquidated damages of $27,400,-000.00 as well as the Additional Discount of approximately $48,500.00. ADP also notified TMI that it was liable for such damages as guarantor of TMSI's obligations. Because the debtors breached the Letter Agreement when they sold TMSI's retail division, ADP ceased making payments to the debtors on the Note executed in connection with the Purchase Agreement in December of 1989. ADP also stopped paying its obligations under several of the assumed contracts and leases and so notified the debtor. *Casale Aff.*, at Exhibit 6. Shortly thereafter, ADP returned most of its leased equipment to the debtors. *Casale Aff.*, at ¶ 8.

ADP filed two unsecured claims against the debtors in the amounts of $291,077.89 and $238,613.13 based upon services that it rendered to the debtors. The former claim is based upon various invoices that the debtors allegedly failed to pay. The debtors object to this claim on the grounds that it is unsupported by adequate documentation and that the ADP has not properly specified the services for which it was billing. The latter claim is for unpaid invoices and for costs purportedly incurred by ADP

in the removal of computer terminals from the debtors' facilities after the sale of assets to Prudential. ADP has not moved to dismiss the debtors' objection to this claim.

### The Settlement Agreement

After the sale to Prudential, ADP and the debtors engaged in negotiations to settle ADP's liquidated damages claim. At this time, the debtors owed ADP approximately $22 million. This amount reflects the $27.4 million in liquidated damages owed to ADP from TMSI less $5.5 million due from ADP to the debtors on the Note from ADP to TMSI as consideration under the Purchase Agreement. The settlement discussions culminated into a settlement agreement ("Settlement Agreement"), which was executed on January 19, 1990. The Settlement Agreement is governed by New Jersey law and it supersedes all prior understandings between the parties.

Under the Settlement Agreement, ADP agreed to accept $15 million from TMSI in satisfaction of all but one of its claims against the debtors.[2] The Settlement Agreement required TMSI to pay to ADP $10 million immediately and $5 million two months later. TMI guaranteed TMSI's obligations under this agreement to a limited extent. If TMSI failed to pay the balance due, ADP could seek recourse against TMI for a period of either one year from the date of default or until TMI filed bankruptcy, whichever occurred first. TMSI and one of its subsidiaries executed security agreements which extended to ADP a security interest representing the $5 million balance in funds held by various depositories.

The Settlement Agreement provided that in the event that TMI or TMSI files a petition in bankruptcy prior to the payment of the $15 million due to ADP under the agreement, ADP would be entitled to file a proof of claim for the full amount of its claim less any payments made by the debtors in satisfaction of the $15 million debt.

---

2. The debtors' claim against ADP for removing certain computer equipment was excepted from the Settlement Agreement. The debtors commenced an action against ADP on this claim.

However, ADP has not moved for summary judgment as to that portion of the debtors' complaint.

However, the Settlement Agreement prohibited ADP from receiving a distribution of more than $15 million plus interest thereon.

TMSI paid to ADP the $10 million due under the Settlement Agreement immediately. However, it failed to pay the $5 million due to ADP on March 19, 1990. ADP notified the depositories of its secured interest in TMSI's rights to the funds which they held. In June and July of 1990, ADP obtained from these depositories $3,565,000.00 of the $5 million balance, leaving $1,435,000.00 plus interest still due.

ADP filed an unsecured claim against both debtors in this bankruptcy case for approximately $27.4 million representing its damages under the Purchase Agreement. The debtors object to ADP's proof of claim asserting that the claim should be characterized as a secured claim for $1,435,000.00 plus interest. The debtors argue that the Settlement Agreement limits ADP's recovery to $15 million plus interest. Because ADP has already been paid $13,883,500.00 in satisfaction of this claim, the debtors reason that ADP is now only entitled to $1,435,000.00 with interest. The debtors allege that this amount is fully secured pursuant to a security agreement that was executed with the Settlement Agreement.

### The General Release

On January 19, 1990, along with the Settlement Agreement, the parties executed the General Release. The General Release releases ADP "... from any and all claims and demands at law or in equity and causes of action of every kind and nature whatsoever including any claims arising out of or related to the 'Original Documents' (as that term is defined in the Settlement Agreement)." *Casale Aff.*, at Exhibit 1. Pursuant to the Settlement Agreement, the Original Documents include the Note from ADP to TMSI, the Master Services Agreement, the Service Agreement and the Letter Agreement. The Purchase Agreement is not specifically defined by the Settlement Agreement as an Original Document.

ADP and the debtors disagree as to whether the General Release extends to the Purchase Agreement. The debtors argue that the Purchase Agreement is not covered by the General Release because it is not explicitly mentioned in the document; The Settlement Agreement does not include the Purchase Agreement in its list of Original Documents. Moreover, the debtors argue that the parties never intended that the General Release should extend to the Purchase Agreement. Thus, the debtors contend that claims arising out of the Purchase Agreement are excepted from the release.

The debtors also argue that, under relevant case law, the General Release only extinguishes claims that were due at the time of the execution of the document. The debtors assert that their indemnification and contract claims against ADP did not arise until after the execution of the General Release. At the time the General Release was executed, the debtors contend that they could not assert an action against ADP based upon the Purchase Agreement. Indeed, the claims did not ripen until various third parties filed claims against the debtors in this bankruptcy case. Accordingly, the debtors reason that they may now bring claims against ADP that arise from ADP's alleged breach of the Purchase Agreement.

ADP denies the debtors' assertions and contends that the General Release released it from all claims that are based upon the Purchase Agreement for several reasons. First, ADP argues that the General Release expressly releases it from any and all claims that the debtors may have against it. Because the language of the release is clear and unambiguous, ADP reasons that it must be given conclusive effect.

ADP also argues that it is not liable for the debtors' claims founded upon the Purchase Agreement because the General Release specifically extinguishes all claims which arise out of or are related to the Original Documents, as they are defined in the Settlement Agreement. ADP admits that the Purchase Agreement is not specifically enumerated in the Settlement Agree-

ment as an Original Document. However, ADP points out that the Note which was executed with the Purchase Agreement as consideration for that transaction, is named by the Settlement Agreement as an Original Document. The Purchase Agreement, ADP argues, is inextricably connected with the Note. ADP points out that the Note would not exist but for the Purchase Agreement. Indeed, the Purchase Agreement declares that the Note is consideration supporting the transaction and the Note contains a clause allowing parties to setoff certain claims arising from the Purchase Agreement. Because the Purchase Agreement is related to the Note, an Original Document, it is subject to the General Release.

Furthermore, contrary to the debtors' position, ADP argues that all of the debtors' claims against it relating to the Purchase Agreement arose prior to the execution of the Settlement Agreement. ADP contends that the debtors' claims against ADP accrued in December of 1989 when ADP notified them that it would no longer meet its obligations under the Note. ADP argues that the claims arose, under applicable contract law, when it gave the debtors notification of its repudiation of the Purchase Agreement.

Finally, ADP argues that it cannot be liable for failing to pay third parties in connection with the Purchase Agreement because the debtors have not demonstrated that the leases and contracts in question were validly assigned to ADP. ADP points out that, under the Purchase Agreement, the debtors were obliged to provide it with the consents of third party contractors and the letter apprising ADP of the status of the consents that they had not obtained. It is undisputed that the debtors failed to deliver these documents to ADP. ADP asserts that the delivery of these documents was a pre-requisite to a valid assignment of leases and contracts. Accordingly, ADP argues that the purported assignments were invalid and thus, it cannot be liable for breaching them.

### Data Processing Agreement

After TMSI sold its retail division to Prudential, TMSI no longer required the extensive data processing services that ADP was to provide it under the Master Agreements. However, because TMSI required more limited services from ADP, TMSI and ADP entered into an informal verbal agreement whereby ADP would provide TMSI with limited services on a cost plus reasonable profit basis. *Gray Aff.,* at ¶ 9. ADP began supplying TMSI with these limited services in August, 1990 and billed TMSI monthly. TMSI paid the monthly bills, although it was not sure whether the amounts charged by ADP were consistent with the cost plus reasonable profits that the parties had agreed upon. *Gray Aff.,* at ¶ 14–15.

On March 27, 1990, the day before TMSI filed its Chapter 11 petition, ADP and TMSI entered into a written data processing agreement ("Data Processing Agreement") whereby ADP agreed to provide various data processing services to TMSI and TMI agreed to pay ADP for these services, in advance, on a weekly basis. The terms of payment were set forth in the letter agreement, as follows:

> Thomson McKinnon Securities Inc. is prepared to continue to make payment for these [data processing] services in advance in the amount of $50,000.00 on Monday of each week (subject, of course, to a mutually agreeable reduction in such amount in the event of any significant decrease in the services required by Thomson McKinnon Securities Inc.).

*Casale Aff.,* at Exhibit 7.

The weekly $50,000.00 payments by TMSI were credited against monthly invoices from ADP that were based upon actual services provided. *Gray Aff.,* ¶ 17. According to the debtors, ADP's monthly billings were not based upon a flat $50,000.00 per week figure. Rather, pursuant to an earlier verbal agreement, the invoices were based upon ADP's cost plus a reasonable profit. *Gray Aff.,* ¶ 18.

TMSI alleges that upon review of ADP's invoices, it discovered that ADP had overcharged it for the services provided by

charging more than cost plus reasonable profits, the payment rate to which the parties had verbally consented. TMSI alleges that ADP owes it a refund due to this overpayment. In support of its position, TMSI points out that according to Invoice # B61685 from ADP to TMSI dated October 5, 1990. *Gray Aff.*, at Exhibit D. ADP owed TMSI $3,860.00. TMSI asserts that it does not know the exact amount of these overcharges because it has not yet undertaken discovery necessary to determine the amounts due, but acknowledges that it may exceed $1 million.

ADP asserts that TMSI has no claim against it for purported overcharges. It contends that the Data Processing Agreement is clear and unambiguous. ADP argues that the weekly $50,000.00 purchase price in the Data Processing Agreement was unqualified and that TMSI should not be permitted to disregard the plain language of the contract. ADP also contends that the agreement contained a mechanism for reduction of the weekly price. Indeed, the agreement provides that the price may be reduced upon the parties' mutual consent if there is a significant decrease in the amount of services. ADP argues that it never agreed to a reduction in price and that TMSI never requested such a reduction nor did it ever complain of an overcharge. *Casale Aff.*, at ¶ 11. It is unfair, ADP argues, for TMSI after it has already received the benefit of ADP's services, to change the price of the services to which it had agreed.

## DISCUSSION

### *Summary Judgment*

In ruling on a motion for summary judgment, the court must review the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, to determine if there is no genuine issue as to any material fact so that the moving party is entitled to judgment, as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing that there is an absence of evidence to support the nonmoving party's

case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 599, 106 S.Ct. 1348, 1363, 89 L.Ed.2d 538 (1986). The nonmoving party may oppose a motion for summary judgment by making a showing that there is a genuine issue as to a material fact in support of a verdict for that party. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

### *Debtors' Action Against ADP For Breach Of The Purchase Agreement*

In deciding ADP's motion for summary judgment dismissing the debtors' action to recover damages it suffered on account of ADP's obligations to third parties under the Purchase Agreement, this court must consider several issues. It must determine whether assignments to ADP were valid, whether the General Release includes the Purchase Agreement, and whether the debtors' claims against ADP arose before or after the General Release was executed. In determining these issues, it is clear that several material issues are in dispute. Accordingly, summary judgment must be denied.

The parties dispute whether the debtors assigned the leases and contracts in question to ADP. Manifestly, if the debtors never assigned leases and contracts to ADP, ADP cannot be held liable for breaching them. ADP asserts that the purported assignments are invalid because the debtors did not deliver the consents of the third party contractors and the letter apprising ADP of the status of the consents. The debtors do not dispute that they did not deliver the consents and letter to ADP. Nevertheless, the debtors argue that ADP assumed the obligations in question by closing the Purchase Agreement and by thereafter respecting its obligations under the assigned contracts. Whether or not the leases and contracts were properly

assigned to ADP is a disputed question of fact.

■ The parties also dispute whether the General Release encompasses claims arising from the Purchase Agreement. The scope of the release is governed by New Jersey law. Under New Jersey law, "the scope of a release is determined by the intention of the parties as expressed in the terms of the particular instrument, considered in the light of all the facts and circumstances." *Bilotti v. Accurate Forming Corp.*, 39 N.J. 184, 203, 188 A.2d 24, 35 (1963); *Hipsley v. Hipsley,* 161 N.J.Super. 119, 390 A.2d. 1220, 1222 (Ch. Div.1978). In this case, although the General Release does not expressly include the Purchase Agreement, it is broad and appears, on its face to extinguish all claims arising from the agreement. However, in order to determine the scope of the General Release under applicable law, this court must ascertain the intention of the parties executing the document and must consider relevant background facts and circumstances.

ADP and the debtors disagree as to the intent of the parties executing the agreement. ADP asserts that the parties intended that the General Release include claims arising from the Purchase Agreement and argues that this intent is evident in the plain language of the release. The debtors, on the other hand, contend that it never intended that the General Release should bar such claims. Because the intention of the parties is a material fact in dispute, the court cannot grant ADP's motion for summary judgment.

■ There is also an issue in this case as to when the claims against ADP arising from the Purchase Agreement accrued. In order to determine whether ADP is liable under the Purchase Agreement, it is necessary to determine when these causes of action arose. Under New Jersey law, which governs the Settlement Agreement and General Release, a general release only extinguishes those claims which could have been asserted when the release was executed. *Bilotti,* 188 A.2d at 24. The parties to this proceeding dispute when the causes of action accrued.

■ ADP asserts that the actions arose before the execution of the General Release, after the debtors breached the Letter Agreement, when it allegedly repudiated its obligations under the Purchase Agreement. The debtors contend that the causes of action did not accrue until claims were filed against it by the injured third party contractors. The debtors argue that they did not know that ADP had ceased honoring its obligations under the assumed contracts until February or March of 1990, shortly before the bankruptcy petitions were filed. Thus, the debtors reason, they did not have an anticipatory repudiation claim before the General Release was executed. Because the parties disagree as to when the causes of actions accrued, summary judgment dismissing cannot be granted.

### The Debtors' Claim Against ADP For Overcharges

■ ADP's motion for summary judgment to dismiss the debtors' claims against it based upon purported overcharges in connection with the Data Processing Services Agreement must also be denied. It is unclear from the single-paged agreement whether the debtors' obligation to pay ADP $50,000.00 a week in advance of services rendered was a payment term representing the amount of ADP's charges for unspecified services or whether it merely represents the manner of payment for services which were not yet known. ADP and the debtors interpret the Data Processing Agreement differently. The debtors argue that the parties executing the agreement intended that the $50,000.00 weekly payment serve as an estimate of actual services to be rendered by ADP. ADP argues that the weekly fee for services was set at $50,000.00. This court must ascertain the intentions of the parties executing the Letter Agreement before it can interpret the document. Because the parties disagree as to their intentions, this court cannot dismiss the action on a motion for summary judgment.

*The Debtors' Objections To
ADP's Proofs Claims*

■ ADP's summary judgment motion to dismiss the debtors' objection to its proofs of claim based on damages arising from the Purchase Agreement is denied because there are factual questions in issue with respect to the extent and validity of the proofs of claim. It is clear from the documents and affidavits before the court that, pursuant to the Settlement Agreement, ADP may only recover $15 million plus interest from the debtors. The parties disagree as to how much of that $15 million remains due and owing to ADP. The parties also dispute whether or not the claim is secured or unsecured. Accordingly, because there are material facts in question, summary judgment in favor of ADP cannot be granted.

■ Likewise, ADP's motion for summary judgment dismissing the debtors' objection to ADP's claim for unpaid invoices must be denied. ADP alleges that the debtors failed to pay several outstanding invoices. The debtors argue that there is insufficient documentation that these invoices were unpaid. They also assert that ADP has not specified the services for which it is now seeking compensation. Because there is a dispute as to the validity of the invoices in question, ADP's motion for summary judgment cannot be granted.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A), (B) and (E).

2. ADP's motion for summary judgment dismissing the debtors' action for turnover of property and the debtors' objections to its proofs of claim is denied because there are material issues in dispute.

SETTLE ORDER on notice.